## In re MEREDITH.

(District Court, N. D. Georgia, E. D.   February 28, 1906.)

No. 69.

1. BANKRUPTCY—RIGHTS OF CREDITORS HOLDING WAIVER NOTES.

 A creditor of a bankrupt, who holds a note containing a waiver of exemptions, is in the position of a secured creditor; the exempt property being in effect a security for his debt. He may prove his claim for the purpose of participating in the bankruptcy proceedings, as provided by Bankr. Act July 1, 1898, c. 541, § 57e, 30 Stat. 560 [U. S. Comp. St. 1901, p. 3443], and the value of his security should be determined in accordance with the provisions of section 57h, by converting the same into money, if it can be done without unduly delaying the distribution of the estate, and, if not, by agreement with the trustee or by submitting the question to a referee, the amount, however determined, to be credited on his claim, and upon the balance due he is entitled to dividends.

In Bankruptcy. On questions certified from referee.

Smith, Hammond & Smith, for trustee.

A. G. & Julian McCurry, and Dorsey, Brewster & Howell, for moving creditors holding waiver notes.

NEWMAN, District Judge. The report of the referee on the matter now presented in the above bankruptcy case is as follows:

"I, Frank L. Upson, one of the referees of said court in bankruptcy, do hereby certify that, in the course of the proceedings in said cause before me, the following questions arose pertinent to the said proceedings:

"First. Whether or not an order should be made allowing petitioners to withdraw their claims, from the bankruptcy court, in order that they might properly participate in the distribution of property in the hands of a receiver under state court proceedings, which was subject to the waiver of homestead and exemption notes held by these petitioning creditors, so that they might realize from said homestead estate such percentage as might be awarded them out of same.

"Second. Whether or not an order should be made that the trustee be directed, in the payment of dividends, to retain in his hands a sufficient sum to protect any dividends which might be properly payable thereafter to these petitioning creditors who hold those waiver notes, so that after such claims are proved the dividends on such claims would be of such amount as would equal the dividends heretofore paid to other creditors, for the amount proved as balance due on the waiver notes.

"Third. Whether or not an order should be made allowing said petitioning creditors, holding said waiver notes, to prove the balance due on their claims after the distribution of said homestead estate, provided said claims are filed for proof with referee in bankruptcy, within 60 days after final termination of said state court proceedings.

"Fourth. The question as to a stay of discharge having been stricken from petition when presented to me as referee, said question was not considered nor passed upon by me.

### "Summary of Fact.

"This petition was filed in this office on the 11th day of December, A. D. 1905, and on the 13th day of January, A. D. 1906, an order was made fixing the 31st day of January, A. D. 1906, as the day for hearing same, which was to be had at referee's office in Athens, said district of Georgia, at 11:30 o'clock in the forenoon. Notice mailed to parties at interest. On the day set for the hearing, A. G. McCurry, Esq., appeared for petitioning creditors, and V. L. Smith, Esq., for the trustee.

"An amendment was offered and allowed adding to petition the allegation that the Mayfield Woolen Mills Clothing Company held two promissory notes in amount of $147 each. The claim of Penn & Watson has not been filed in this court.

"It was agreed between counsel that the facts set forth in the petition relating to proceedings in state court, and the former proof of claims in this bankruptcy court, the payment of the dividends and returns thereof to trustee, were true as set out.

### "Finding of Law.

"As to the question of the right to withdraw these proved claims, I find that it is a matter within the discretion of the court, and, where it appears not to work to the disadvantage or interest of other creditors and is not opposed by the bankrupt whose interests are affected, that the court would allow the withdrawal of the claims. In re Swords, 7 Am. Bankr. Rep. 436, 112 Fed. 661.

"I find that the provisions of the law relating to the administration of the estate direct and require that the trustee shall close same by distribution of the resulting funds as expeditiously as possible, compatible with the best interests of parties in the cause.

"I find that under Act July 1, 1898, c. 541, § 57n, 30 Stat. 560, 561 [U. S. Comp. St. 1901, p. 3444], there is fixed a limitation as to the proof of claims, at one year from the date of adjudication, and I find that the proposed litigation of these petitioning creditors, in the state court, does not place them within the excepting clause of section 57n, allowing subsequent proof of a litigated claim within 60 days after the rendition of a final judgment had on the litigation within 30 days after the expiration of the year. In re Thompson's Sons, 10 Am. Bankr. Rep. 581, 123 Fed. 174; In re Prindle Pump Co., 10 Am. Bankr. Rep. 405; In re Rhodes, 5 Am. Bankr. Rep. 197, 105 Fed. 231.

"As I apprehend the meaning and spirit of the decision of the United States Supreme Court, in the case of Lockwood v. Exchange Bank, 10 Am. Bankr. Rep. 107, 23 Sup. Ct. 751, 47 L. Ed. 1061, the court ruled and directed that, as between the inconvenience to the creditors and parties at interest, of being denied the right to subject the exempted property to their claims in the court of bankruptcy, and the bringing of a separate cause in a state court to enforce the same, the spirit and letter of the law required the ruling that the property would not be administered in the court of bankruptcy, and, because of the equities held by waiver note creditors against this particular fund, the discharge of the bankrupt on application would be stayed for a limited time, this would not interfere with the expeditious administration of the estate by the trustee, but would simply prevent the bankrupt from gaining an advantage over certain of his creditors which would work to their injury. On the other hand, the ruling of the court goes on to deal with the rights existing between the general creditors and those holding waiver notes, and, while deciding it unnecessary to pass upon the question as to whether the general creditors have any remedy to prevent these special waiver note creditors from sharing with them in the general fund, and afterwards getting an additional payment from the exempted property, it is clear that in no part of the decision does the court intimate that it would be equitable for this special class of creditors to delay the administration of the estate in order to obtain an extra dividend out of a special fund, and then come back and share with the general creditors on the remainder of their debt after crediting thereon this special credit, and for this purpose ask a special exemption from the limitation of section 57n, as to proof of their claim, as well.

"It might in fact, and probably often does, occur that the waiver notes are paid in full by the exempted property, yet until such was done, if this procedure as sought was allowed, the general estate would remain tied up by the setting apart of these dividends, to the manifest hindrance and delay of the administration of the same by the trustee.

"Nor does there seem to be any method of determining what amount should be set apart as reserved dividends for these claims, since no evidence had been adduced showing the actual pro rata to be paid on them by the state court's receiver, nor the probable outcome thereof; nor has this court any jurisdiction to determine the validity of the waiver clause in said notes, which might be in some of them successfully contested in the state court, although, if this proposed delay in the administration of this estate is allowed, the fund on all such invalid waiver notes would be tied up along with those which were valid and subsisting, and this court would therefore have to resort to the expediency of guessing how much of the funds to withhold in order to compute the probable sums which would be hereafter proved after payment from the fund in the state court case, as well as allow the sum so guessed at to be withheld for those waiver notes which will share in the special fund and those (which for the reason they are disallowed to share in the fund) are, alike on the fact of the claims, entitled to do so."

The case presents the question as to the relative rights of creditors of a bankrupt having notes containing a waiver of homestead and exemption, and simple contract creditors without any such waiver. The question had been referred to in adjudicated cases, but has never been expressly decided.

In the case of In re Bass, 3 Woods, 382, Fed. Cas. No. 1,091, Mr. Justice Bradley, in the opinion rendered in the Circuit Court, reviewing the action of the District Court, speaks of it in this way:

"What equities might arise if there were several creditors, and some of them had a lien or claim against the homestead property, and others not, it is not necessary to decide. Those who have no such claim might, perhaps, properly object to those having such a claim being allowed to come in for a dividend against the general assets until they had first exhausted their remedy against the exempted property, on the principle of marshaling assets. This would depend on the question whether the equity of the general creditors is superior to that of the bankrupt and his family in reference to the right of homestead and exemption. In some cases, at least, the equities might perhaps be equal, in which case the court would not require the assets to be marshaled."

In Lockwood v. Exchange Bank, 190 U.S. 294, 23 Sup. Ct. 751, 47 L. Ed. 1061, in the opinion by Mr. Justice White, the question, although not determined, was referred to in this manner:

"As, in the case at bar, the entire property which the bankrupt owned is within the exemption of the state law, it becomes unnecessary to consider what, if any, remedy might be available in the court of bankruptcy for the benefit of general creditors, in order to prevent the creditor holding the waiver as to exempt property from taking a dividend on his whole claim from the general assets, and thereafter availing himself of the right resulting from the waiver to proceed against exempt property."

It would be a simple matter of course, if the creditors holding notes containing a waiver of homestead and exemption could be paid in full out of the exempt property upon the principle of marshaling assets, as stated by Mr. Justice Bradley in the Bass Case. They would first resort to this property upon which they have a claim, and general creditors without waiver none, and being paid in full therefrom, could not come upon the general assets in the hands of the trustee in bankruptcy. But the difficulty arises where only a part of claims can be paid from either source. It is estimated that something like 25 per cent. will be realized by these creditors having waiver notes, out of the exempt property, and something like that per cent., probably, out of the general assets; the size of this general dividend being dependent upon the rights of creditors holding the waiver of exemption. While the creditors having notes with waiver of homestead and exemption have no lien, they have a peculiar claim against this special property, which the general creditors have not. This peculiar right of the waiver creditors would not seem to be greater than that of secured creditors; that is, creditors having a lien by mortgage, pledge, or the like.

In Bell v. Dawson Co., 120 Ga. 628–630, 48 S. E. 150, Chief Justice Simmons, delivering the opinion of the court, refers to the peculiar rights of creditors holding notes containing a waiver of homestead in this way:

"The waiver becomes in the nature of a security, in that the debt may be made out of any property owned by the debtor, without regard to any exemption rights which the debtor would have had but for the waiver."

And again, in the course of the opinion this language is used:

"The goods exempted are, as above stated, in the nature of a security for the payment of the debt."

The rights of secured creditors under the bankruptcy act of 1898 are stated in section 57, subsections "e" and "h." Subsection "e" provides that:

"Claims of secured creditors and those who have priorities may be allowed to enable such creditors to participate in the proceedings at creditors' meetings held prior to the determination of the value of their securities or priorities, but shall be allowed for such sums only as to the courts seem to be owing over and above the value of their securities or priorities."

Subsection "h" provides that:

"The value of securities held by secured creditors shall be determined by converting the same into money according to the terms of the agreement pursuant to which such securities were delivered to such creditors or by such creditors and the trustee, by agreement, arbitration, compromise, or litigation, as the court may direct, and the amount of such value shall be credited upon such claims, and a dividend shall be paid only on the unpaid balance."

It appears, therefore, that secured creditors may prove their claims, but shall only participate in the general assets and receive a dividend on the amount of their claims, less the amount realized from the securities held. It seems to me that the rights of creditors holding waiver notes would be the same, or no more than creditors holding security. The difficulty presented in this case, and which may arise in many cases, is, as a matter of practice, how to reach this result. The administration of an estate in the bankruptcy court ought not to be delayed in order to await what may prove to be a prolonged litigation in the state courts over the rights of the waiver creditors against the exemption. The object of the bankruptcy courts should be the speedy administration of the estate of the bankrupt and the prompt distribution among the creditors of what is realized from the assets. If the percentage to be realized by creditors holding waiver notes out of the exempt property could be reached between the trustee and such creditors by agreement before the referee, as provided in the case of secured creditors, in section 57h, this would be a prompt method of proceeding with the administration of the estate in this court. If this is not done, the value to the creditors holding waiver notes of their right against the homestead estate—that is to say, the percentage which they will realize from it on their debts—should be ascertained by the referee in accordance with section 57h of the bankruptcy act. A method should be readily found to reach the proper per cent. to be deducted, in view of the latitude allowed by subsection h for ascertaining it.

The order of the referee in this case is modified in accordance with the views hereinbefore expressed. He will allow the proof of the claims of these creditors holding waiver notes for an amount to be ascertained, by deducting the percentage to be received by them through the state court from the exempt property. If an agreement is not reached between the trustee and these creditors having waiver of exemption, he will cause such per cent. to be ascertained in accordance with section 57h. The record before the court in this case shows clearly that these creditors having waivers of exemption are prosecuting their rights against the exempt property in the state court. The exempt property is now in the hands of a receiver of the

state court, and will be administered for the benefit of creditors holding waivers of homestead exemption under the authority of the decision of the Supreme Court of the state in Bell v. Dawson Co., supra. An application to stay the discharge of the bankrupt in order that creditors may proceed in the state court against the exempt property has already been allowed, and can be somewhat further and reasonably extended, should it become necessary and proper to do so.