KRONSTADT v. CITIZENS & SOUTHERN NAT. BANK OF SAVANNAH.

No. 7715.

Circuit Court of Appeals, Fifth Circuit.

Nov. 30, 1935.

Rehearing Denied Dec. 30, 1935.

Jacob Gazan and Perry Brannen, both of Savannah, Ga., for appellant.

A. B. Lovett, of Savannah, Ga., for appellee.

Before HUTCHESON and WALKER, Circuit Judges, and HOLMES, District Judge.

HUTCHESON, Circuit Judge.

This is a controversy between the trustee and the bank over whether its assignment of a homestead exemption right prevails over the bankrupt's renunciation of homestead. It concerns the proceeds of a part of the bankrupt's stock, pointed out and claimed by him as exempt, and sold by the trustee with the understanding that it was, and that the proceeds would be, exempt.

The question arises because, after the claiming and pointing out of the stock and its actual setting apart and sale by the trustee as exempt, but before the report of the sale had been filed, or a formal setting apart had taken place, the bankrupt amended his schedules by withdrawing his application for a homestead exemption, and disclaiming all interest in the assets.[1] Whereupon the bank, protesting the disclaimer and waiver as ineffective as to its assignment, insisted that the setting apart of the exemption be completed, and that the proceeds of the exempt property be applied to its debt.

The referee held, on the authority of In re Martin Bros. (D.C.) 294 F. 368, that the renunciation was effective. He denied the bankrupt's claim. The District Judge thought it ineffective as to the bank. Reversing the referee, he sustained the bank's claim. This appeal tests the correctness of that ruling. These are the facts:

Hirsch executed two notes to the bank, one dated November 20, 1933, for $775.83; the other dated December 4, for $155. Each of these notes was of the same tenor and effect. Among other things, each provided: "Each of us * * * hereby jointly and severally transfer, assign and convey to the owner of this note a sufficient amount of my or our homestead and exemption either of us, or the family of either of us, may have under or by virtue of the Constitution or laws of Georgia, or any other state of the United States, as against this debt or any renewal thereof. * * * and I or we hereby request and direct the trustee to deliver to the owner of this note a sufficient amount of money or property claimed as exempt to pay off the amount so allowed on this debt. * * * In case of bankruptcy the holder or owner of this note is appointed attorney in fact for each of the undersigned, to claim any and all homestead exemptions allowed by law."

On December 6, 1933, an involuntary petition in bankruptcy was filed, and on it Hirsch was adjudicated bankrupt.

In his original schedules the bankrupt, as head of a family, claimed a homestead exemption of $1,600. On January 10, 1934, at the first meeting of the creditors the bank filed claim on the notes, assignments, and powers of attorney above. In that proof, joining with the bankrupt in his application for the homestead exemption, it alleged that under the powers granted in the notes it had title and interest in the exemption to the extent necessary to pay off and discharge the notes. At that meeting a trustee was elected, and ordered to advertise and sell the assets. Before the sale the trustee had the bankrupt point out and select for his homestead exemption, articles of merchandise of the appraised value of $1,600, and agree to their sale with the balance of the stock as a whole. At the sale on January 30th, the stock and fixtures brought $5,450, of which the part pointed out, claimed by and allowed to the bankrupt as exempt, offered separately, produced $1,000. After the trustee's report as to the exemption claim and as to the sale had been written, but before it had been filed, and therefore before the sale had been confirmed or the exemption formally set apart, the bankrupt amending his schedules waived and renounced his homestead exemption claim. On January 31st, the trustee filed his written report of the sale of the property as a whole and recommended its confirmation.

The bank objecting to the confirmation of the sale as a whole, it was agreed that the sale would be confirmed without prejudice to its claim of interest in and title to the bankrupt's exemption, and therefore to the proceeds of the sale of the property he had pointed out and claimed as exempt. Thereafter, the bank filed its petition, alleging that the trustee had not made his report to the court setting aside to the bankrupt the articles claimed, and that because of his failure to do so it was unable to proceed to subject that exempt property to its debt. It alleged that the bankrupt's disclaimer had been ineffective as to the bank's title and interest in the exemption, and

---

[1] "And now comes the said Solomon Hirsch, bankrupt, and amends his petition as follows:

"He hereby disclaims all right, title and interest to any of the assets or merchandise of the said estate and hereby withdraws his petition for setting aside a homestead exemption."

prayed that the trustee be required to report the articles pointed out and claimed so that the bank could make its debt out of the proceeds of their sale. The referee dismissed the bank's petition. On review, the District Judge held that the assignment notes the bank held constituted under the laws of Georgia a transfer to the bank of the exemption right, effective to appropriate it to their satisfaction. He held further that after the bankrupt had pointed the exemption out and claimed it, and it had been agreed·to by the trustee, the bankrupt could not, by withdrawing his request and waiving the exemption claimed, defeat the bank's preferred position and let the general creditors in. He sustained the bank's claim to the property set apart and to the proceeds of its sale.

Appellant admits that under the Constitution and laws of Georgia a creditor of a bankrupt who holds a note containing a waiver of exemption is, as to the exemption claimed by and set apart to the bankrupt, in a preferred position as to general creditors. Such a creditor may make his debt out of the exemption allowed the bankrupt, and neither the bankrupt nor the general creditors can complain. Bell v. Dawson Grocery Co., 120 Ga. 628, 48 S.E. 150; In re Meredith (D.C.) 144 F. 230; Re Arnall (D.C.) 285 F. 654; Citizens' National Bank v. Hargraves (C.C.A.) 164 F. 613, 614; Pincus v. S. H. Meinhard & Bro., 139 Ga. 365, 77 S.E. 82.

He admits too, that the Georgia courts hold that the homestead exemption is an estate. Buchan v. Daniel, 147 Ga. 450, 94 S.E. 578; Willingham v. Maynard, 59 Ga. 330; an estate assignable before the property is set apart by the Trustee. Strickland Hardware Co. v. Fletcher, 152 Ga. 445, 110 S.E. 229; Silver & Goldstein v. Ridley-Yates Co., 166 Ga. 49, 142 S.E. 279 [2]; Warren County Fertilizer Co. v. Reese, 156 Ga. 824, 120 S.E. 534 [3]; Morris Fertilizer Co. v. White, McCurdy & Co., 158 Ga. 38, 122 S.E. 692. He admits also that a transfer and assignment of the exemption made before bankruptcy is effective as an assignment of an estate against the bankrupt and all others. Saul & Co. v. Bowers, 155 Ga. 450, 117 S.E. 86; Bank of Donalsonville v. Frank & Co., 159 Ga. 846, 126 S.E. 832; Comer Bank v. Meador-Cauthorn Co., 160 Ga. 717, 128 S.E. 785; Citizens' Bank & Trust Co. v. Pendergrass, 164 Ga. 302, 138 S.E. 223; Martin v. Citizens' Bank, 170 Ga. 180, 152 S.E. 234; Livingston v. Epsten-Roberts Co., 50 Ga.App. 25, 177 S.E. 79, and cases above cited. He insists, however, that these cases are authority only for the proposition that whether the creditor holds a waiver or an assignment it takes effect as against exempted property only when it has been set apart in bankruptcy. That none of them hold or give warrant for the holding, that where the bankrupt, as here, has refused to claim and have his exemption set apart to him, but has renounced it, the creditor can claim it for him. He insists that if the Georgia cases do go this far, they cannot bind the federal court to do so, for an exemption at last being personal to the bankrupt, how it shall be claimed and set aside, and who may claim it, is for the federal, not for the state, courts, to decide. He urges that the Lockwood Case (Lockwood v. Exchange Bank of Fort Valley), 190 U.S. 294, 23 S.Ct. 751, 47 L.Ed. 1061, in principle, and the Martin Bros. Case, supra, on its facts, each decided the very question adversely to appellee's contention. That the Lockwood Case holds that controversies between creditors holding waive notes and the bankrupt are not for the bankruptcy, but for the state courts, and that the Martin Bros. Case applies this principle in holding that, where the bankrupt has not claimed the exemption, a creditor holding an assignment of it may not, in the bankruptcy court, claim it for him.

Appellee disputes appellant's primary point, that who may claim an exemption is for the federal, and not for the state, courts to say. It cites to the general proposition that the whole nature and all the incidents of exemptions are determined by the state laws, and that the federal courts follow the state courts as to those, Holden v. Stratton, 198 U.S. 202, 214, 25 S.Ct. 656,

---

[2] In the Silver Case it was held that waiver of homestead with authority to the trustee to retain and sell enough of the exemption to pay the debt was not, because lacking words of transfer, an assignment of homestead interest.

[3] This case, citing Isaacs on Homestead Waivers § 27 p. 40 et seq., held a voluntary bankrupt has an assignable interest in property claimed by him in his petition as exempt, under the Constitution and homestead laws of the state; and that he may assign the property in good faith to an existing creditor before it is set apart by the trustee in bankruptcy, and therefore before the exemption is confirmed by the referee.

49 L.Ed. 1018; Clark v. Nirembaum (C.C. A.) 8 F.(2d) 451; In re Trammell (D.C.) 5 F.(2d) 326; White v. Stump, 266 U.S. 310, 45 S.Ct. 103, 69 L.Ed. 301; c/f Johnson v. Star, 287 U.S. 527, 53 S.Ct. 265, 77 L.Ed. 473. On the precise point in question, as to the right of an assignee of a homestead exemption claim to claim the exemption, and have it set apart, it cites In re National Grocer Co. (C.C.A.) 181 F. 33, 30 L.R.A.(N.S.) 982. Finally, it insists that the Georgia decisions, both federal and state, make it clear that the bank, holding an equitable interest in the homestead exemption, stood and stands in a secured position as to the bankrupt and his general creditors, such that the bankrupt, by withdrawing his claim to the exemption, could not defeat it of its security.

■ We think appellee is right. Under the laws of Georgia a creditor holding a waiver note is in a position to satisfy his debt out of exempted property actually claimed by and set apart to the bankrupt. This waiver is but a personal contract between him and the bankrupt. It confers no lien; it conveys no right in the exemption. Norris v. Aikens, 155 Ga. 488, 117 S.E. 248; Saul & Co. v. Bowers, 155 Ga. 450, 117 S.E. 86; Silver & Goldstein v. Ridley-Yates Co., 166 Ga. 49, 142 S.E. 279; In re Bowers (D.C.) 278 F. 681, affirmed McWhorter v. Barnes (C.C.A.) 283 F. 1022. Thus a creditor holding a general waiver has no interest in or title to the exemption; no right to have any property set aside to him, but only the right to insist that the bankrupt cannot, after the exemption in bankruptcy has been set aside, claim it against him. The Bowers Case held that a bankrupt who had, before his bankruptcy, given a creditor a waiver, but not a transfer or assignment of his homestead exemption, could, after he had applied in bankruptcy for and the trustee had tentatively set aside his exemption to him, renounce and waive the exemption, letting the general creditors in to share equally with the waiver creditor. It is there said, 278 F. 681, page 683: "The creditors [persons holding general waivers] who are complaining must rest their rights upon the waiver made in their notes. This waiver was not a covenant that the debtor would seek and claim a homestead against all other creditors, and renounce it in favor of those to whom he was giving the waiver. On the contrary, it was a general declaration of renouncement of homestead against the

debts made, and that only. If the debtor claims no homestead, he has done these creditors no wrong. He has faithfully adhered to the agreement to waive and renounce his right to a homestead. I do not see that his act in first claiming it and then renouncing it can operate to enlarge the rights of these creditors."

■ When, however, the bankrupt, as he is authorized to do under the Constitution and laws of Georgia, secures the creditor with a transfer and assignment of his constitutional homestead exemption claim, that creditor holds a title and interest which cannot be defeated by any act of the bankrupt, either by way of renunciation or transfer. Authorities, supra.

■ We do not think it can be justly said that one so situated, who has acquired his right under the decisions of Georgia affirming and recognizing his position as that of an owner of an interest in the bankrupt's exemption claim, may be defeated of that right upon the idea that the bankruptcy court is not bound to respect the assignment. We do not think that court may defeat a creditor so secured by administering, in the interest of general creditors, proceeds of property claimed by the bankrupt as exempt, and sold as such, merely because the bankrupt, deciding not to pursue the claim further, has endeavored to renounce it. In Re National Grocer Co. (C.C.A.) 181 F. 33, 30 L.R.A.(N.S.) 982, a case arising in Michigan, whose decisions, as those of Georgia do, recognize the assignability of exemptions, the point appellant makes has been definitely ruled against him. It was there held that a creditor, holding a general assignment like the one here, was entitled in the bankruptcy court to claim and avail, to the extent necessary to secure him, of the bankrupt's exemption. It is quite clear that this was in accordance with the decisions of the Michigan courts, as to the declared policy of the state in the administration of its exemption laws. We think the reasons given for following the state law in that case apply with peculiar force here. Georgia, like Michigan, and unlike Pennsylvania, In re Sloan (D.C.) 135 F. 873, and North Carolina, Mitchell v. Mitchell (D.C.) 147 F. 280, 283, Boone v. Hardie, 87 N.C. 72, which hold that a claim of exemption is not a vendable and assignable estate, Eberhart's Appeal, 39 Pa. 509, 513, 80 Am.Dec. 536, holds that it is. Georgia, like Michigan, recognizes that a creditor holding such an estate has

before the setting apart of the exemption, an equitable, though inchoate, interest, which becomes legal and fixed when it has been claimed and set apart. The policy which the Georgia decisions evidence is that the purpose of the waiver provision in the Constitution is to permit a hard pressed debtor to use his exemption to obtain the credit which, in his extremity, may save him. Under the waiver provison, as construed by the state courts of Georgia and of Michigan, he is undoubtedly in a better position than he would be in some of the other states, to obtain this credit. Under these decisions he may not only issue a general waiver, which, if he does not claim the exemption, will operate to let the general creditors in equally with the creditor making the advances on the faith of the waiver, but he may make a transfer of the exemption by way of security. So circumstanced, he will always be better able to find a creditor willing to make the desperately needed advances than he would be if he could not secure him; if he could issue only a general waiver. Whether this policy is a good one for a state to adopt is not for us to say. Whether the policy prevailing in some states of prohibiting advance waivers altogether, that prevailing in other states of giving a qualified right to waive, or that prevailing in Georgia and Michigan of giving a right also to assign, is best, we need not say.[4] What the policy of Georgia actually is, as its Supreme Court has stated it, is, we think clear. That policy is to make the exemption available to a bankrupt not merely after ruin has fallen and bankruptcy has ensued, but before bankruptcy, when ruin, though impending, has not actually fallen. That policy is to make it available to him not merely as salvage from his wreck, but before the wreck has occurred, as perhaps the means of saving him from it. With that policy we think the court of bankruptcy is not concerned, except to carry it out and give it effect. We think that court may not refuse to recognize the transfer by declining to turn over to the assignment creditor the proceeds of property which, as here, the bankrupt has claimed, pointed out, and had set apart to him.

We think the District Judge was right. His order is affirmed.

4 A general discussion of the bankrupt's right to waive and assign his exemptions, and of the right of persons holding waive notes and transfers of exemptions, may be found in Collier on Bankruptcy (13th Ed.) vol. 1, pp. 291 to 303, where the decisions are gathered.