**Sylvia MIMS, Plaintiff,**

v.

**DIXIE FINANCE CORPORATION,
Defendant.**

**No. C75–627A.**

United States District Court,
N. D. Georgia,
Atlanta Division.

May 6, 1976.
Order Nov. 4, 1976.

Joseph H. King, Jr., Atlanta, Ga., for plaintiff.

Steven Gottlieb, Savannah, Ga., for Doris Alston Moore, amicus curiae.

Richard K. Greenstein, Robert E. Stagg and Robert N. Dokson, Atlanta, Ga., for Atlanta Legal Aid Society, Inc., amicus curiae.

Charles M. Baird, Atlanta, Ga., for Ga. Legal Services Programs, Inc., amicus curiae.

Andrew J. Britton, Hansell, Post, Brandon & Dorsey, Atlanta, Ga., for defendant.

Before EDENFIELD, HENDERSON, MOYE, O'KELLEY, FREEMAN and HILL, District Judges.

## ORDER

MOYE, District Judge.

This truth-in-lending action is presently before the Court on (1) the Special Master's recommendation filed April 22, 1976, that plaintiff's motion to dismiss the defendant's compulsory counterclaim on the note be denied; (2) the Special Master's recommendation filed April 8, 1976, that the defendant's motion for summary judgment be granted and the plaintiff's motion for summary judgment be denied; and (3) defendant's objections filed April 26, 1976, concerning the Special Master's amendment filed April 20, 1976, to his original recommendation filed April 8, 1976.

■ (1) The Court hereby approves and adopts the recommendation of the Special Master that a counterclaim for the balance of the underlying obligation in a truth-in-lending action is a compulsory counterclaim under Fed.R.Civ.P. 13(a). Plaintiff's motion filed October 29, 1975, to dismiss the defendant's compulsory counterclaim on the note is ORDERED DENIED. In so doing, the Court overrules the line of cases in this Court beginning with *Roberts v. National School of Radio and Television Broadcasting*, 374 F.Supp. 1266 (N.D.Ga.1974). In addition, the Court notes that this change in the law works no hardship on those lenders previously barred from asserting amounts due on the loan as a compulsory counterclaim where the case has already proceeded to a final judgment. Principles of res judicata or collateral estoppel will not bar the submission of these claims on the note in the state courts since prior to today's ruling those claims could not have been litigated in the federal courts by virtue of the *Roberts* case, *supra.*

■ (2) The Court hereby approves and adopts the recommendations of the Special Master filed April 8, 1976, with respect to the following rulings: (a) Voluntariness of the Insurance Authorization (plaintiff estopped from denying voluntariness), (b) Waiver of Tort Claim as finance charge (no truth-in-lending violation), (c) Waiver and assignment of homestead or exemption rights as a security interest (no violation of truth-in-lending act); (d) Disclosure of Finance Charge as Total Finance Charge (no truth-in-lending violation). Defendant's motion for summary judgment filed October 20, 1975, is hereby ORDERED GRANTED. Plaintiff's motion for summary judgment filed September 29, 1975, is hereby ORDERED DENIED.

(3) The defendant's objections filed April 26, 1976, concerning the Court's adoption of $25 in attorney fees for plaintiff's abuse of discovery and defendant's request for $100 in attorney fees are hereby ORDERED DENIED.

The sole remaining issue in this case is defendant's counterclaim on the note. The Special Master will entertain motions for summary judgment within 30 days on this counterclaim as noted in his recommendation filed April 22, 1976.

Attached to this Order as an Appendix are the Special Master's recommendations entered April 8, 1976, and April 22, 1976.

## ORDER

This truth in lending action is before the Court on the Special Master's Second Amendment to Recommendation. This Court hereby adopts and approves this second amendment. The recommendation as amended is hereby made an Appendix to this Order.

APPENDIX

SYLVIA MIMS,                          )
                                      )
                Plaintiff             )
                                      )          CIVIL ACTION
Vs.                                   )
                                      )          NO. C75-627A
DIXIE FINANCE CORPORATION,            )
                                      )
                Defendant             )

RECOMMENDATION OF SPECIAL MASTER

Before the Court in this truth in lending action is plaintiff's motion for reconsideration of this Court's Order dated May 10, 1976. This recommendation will treat all issues raised by plaintiff except the issue as to the discovery abuse. Plaintiff's attorney has informed this Special Master that plaintiff withdraws that issue. This recommendation will be divided as follows:

I.   THE DEFENDANT'S COUNTERCLAIM

II.  THE TRUTH IN LENDING CLAIMS

    A.   REQUIREMENT OF INSURANCE

    B.   WAIVER AND ASSIGNMENT OF EXEMPTION

    C.   USE OF TERM "TOTAL FINANCE CHARGE"

III. CONCLUSION

---

## I. DEFENDANT'S COUNTERCLAIM

Plaintiff contends that this court, sitting en banc, improperly allowed the defendant's counterclaim for the debt created by the consumer credit transaction upon which plaintiff's truth in lending action is based. In so doing, the court overruled the line of cases in this court beginning with *Roberts v. National School of Radio and Television Broadcasting*, 374 F.Supp. 1266 (N.D.Ga. 1974). Good recent discussions of whether the lender's counterclaim is compulsory in a truth in lending action are to be found in two federal district court cases decided after this court's earlier order in this case. These two cases are *Rollins v. Sears, Roe-*

buck & Co., (E.D.La.1976) 71 F.R.D. 540, and *Zeltzer v. Carte Blanche Corp.*, (W.D. Pa.1976) 414 F.Supp. 1221. They are summarized at 45 U.S. Law Week 2029 (July 20, 1976). *Rollins* rejected *Roberts*, while *Zeltzer* followed it.

The questions to be answered and tests to be applied in determining whether the counterclaim is to be allowed are well set out in *Roberts*. The first question is whether the counterclaim is compulsory under traditional tests. The second question is whether the public policy considerations persuade the court to disallow an otherwise compulsory counterclaim.

■ This court is virtually compelled to hold that the counterclaim is compulsory under traditional tests. *See, Spartan Grain & Mill Co. v. Ayers*, 517 F.2d 214 (5th Cir. 1975). In that case, the Fifth Circuit obviously perceived the claim and the counterclaim to arise out of the same transaction. Superfluously, this Special Master notes that he shares in that perception.

It is doubtful that this court's perception of public policy considerations should persuade it not to entertain an otherwise compulsory counterclaim. The Supreme Court has admonished the federal judiciary that it should not, without legislative guidance, substantially reallocate the burdens of litigation. *See, Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). To suspend the Federal Rules of Civil Procedure, which were promulgated by the Supreme Court and approved by Congress, in order to effectuate a strong judicial or congressional policy would be incautious of that admonition.

However, as a matter of interest, this Special Master notes that entertaining the counterclaims has not proved very burdensome. This Special Master has found that he must be quite versed in the state law governing the consumer credit transactions in order to rule on the truth in lending claims. Indeed, about the only fact necessary to the counterclaim and not necessary to the truth in lending action is how much the plaintiff has paid to date. There is usually no genuine dispute about this fact.

Further, as a matter of interest, this Special Master notes that entertaining the counterclaims will reduce the number of truth in lending suits filed in this court. Many of these suits are filed by delinquent debtors. Their major targets are consumer finance companies licensed under the Georgia Industrial Loan Act. The delinquent debtors and their attorneys generally will be loath to file truth in lending cases in face of the counterclaim.

It may be, as the Atlanta Legal Aid Society, amicus curiae, states, that reducing the truth in lending actions harms the public interest, especially the interest of the poor. Or it may be, as the Federal Reserve Board staff indicated in a recent letter * transmitting to the Senate proposed amendments to the Act, that much of the present truth in lending litigation is needless, abusive, and overly burdensome to the courts. But this court is excused from this debate, which is properly commended to Congress. This court's duty in truth in lending litigation is to adjudicate the claims and counterclaims, as best it can, within the limits of its jurisdiction and the framework of its rules.

## II. THE TRUTH IN LENDING CLAIMS

### A. REQUIREMENT OF CREDIT INSURANCE

Plaintiff contends that defendant improperly failed to include in the finance charge the charges for credit insurance. Plaintiff contends that these insurance charges should have been included in the finance charge because credit insurance was required. Regulation Z § 226.4(a)(5) states that the credit insurance charges must be included in the finance charge unless:

(i) the insurance coverage is not required and this fact is clearly and con-

---

* Letter dated July 16, 1976 from Stephen S. Gardner, *Office of the Vice Chairman, Board of Governors, of the Federal Reserve System*, to The Honorable William Proxmire, Chairman, *Committee on Banking, Housing and Urban Affairs*, United States Senate.

spicuously disclosed in writing to the customer; and

(ii) any customer desiring such insurance coverage gives specific dated and separately signed affirmative written indication of such desire after receiving written disclosure to him of the cost of such insurance.

In this case, the insurance authorization disclosed:

The purchase of [credit insurance] is not required by lender in order for borrower to obtain this loan. Such insurance may be obtained by the borrower at his option.

. . .

I (or we), borrower herein, having first examined the premium cost for [credit insurance] do hereby elect to purchase the insurance as checked with a mark in the above boxes if any. . . .

This authorization was dated and signed by plaintiff.

Plaintiff contends that the recitals as to insurance are not true. As proof that insurance was required, she submits her affidavit that she applied for a loan, returned the next day, and was presented with the entire contract, including the insurance authorization, filled out. Plaintiff further states in her affidavit that before she signed she noticed the insurance purchase, did not want insurance, but said nothing about it since she figured that it was required.

If what plaintiff says is true, she has not proved that credit insurance is required. She cannot prove that unless she asks whether the insurance is required and is told that it is. Her assumption that it is required is not enough. *Lamar v. American Finance Systems*, C75–1469A (Moye, D. J. 1976). It is natural for anyone, no matter how sophisticated, who wants to borrow money to be unwilling to displease the lender over a small matter. This tendency helps a lender put on a hard sell such as plaintiff described. The importance of these insurance sales to consumer lenders and their effectiveness in procuring them is well known. *See, e. g., Consumer Credit in the United States, Report of the National Commission on Consumer Finance* (1972). But selling insurance in the manner described by plaintiff does not amount to requiring insurance.

The Truth in Lending Act requires written disclosures to facilitate credit shopping. 15 U.S.C. 1601 et seq. Here, plaintiff did not use the disclosures. Plaintiff is not entitled to oral disclosure that credit insurance is not required.

█ The courts have all held that the debtor is estopped from contending that insurance was required if the insurance authorization recites that it was not. *Johnson v. Blazer Financial Services*, C75–178–MAC (M.D.Ga.1976) (Owens, D. J.); *Jackson v. Consumer Credit Corp.*, 126 Ga.App. 106, 190 S.E.2d 80 (1972). This court has held that the debtor is estopped unless she can show fraud or other duress. *Anthony v. Blazer Financial Services*, C74–3023A (Freeman, D. J. 1975). This holding was restated in this case in the order now under reconsideration.

A better statement of the rule is that plaintiff must prove that the creditor specifically and unequivocally informed her that insurance is required in order to contradict the recital to the contrary. *Williams v. Public Finance Co.*, C75–1423A (Moye, D. J. 1976); *Collins v. Household Finance Corp.*, C75–2507A (Edenfield, C. J. 1976). Thus, if plaintiff proves that she told the creditor that she did not want the insurance and the creditor told her that no loan would be made without insurance, plaintiff has met her burden. Cases in which the burden was met in the opinion of this Special Master are *Selman v. AVCO Financial Services*, C75–2040A (Rec. Cohen, B. J. 1976) and *Selman v. Pacific Finance Loan*, C75–2041A (Rec. Cohen, B. J. 1976).

But in this case, plaintiff's contention is not well taken. She has not proved the insurance was required.

## B. WAIVER AND ASSIGNMENT OF EXEMPTION

█ Plaintiff contends that defendant failed to disclose as a security interest the

clause providing for a waiver and assignment of any right plaintiff might have to claim certain of her property as exempt from levy and sale. The clause on which plaintiff's argument focuses provides:

Each of us, whether Principal, Surety, Guarantor, Endorser, or other party hereto, hereby severally waives and renounces, each for himself and family, any and all homestead or exemption rights either of us may have under or by virtue of the Constitution or Laws of Georgia, any other State, or the United States, as against this debt or any renewal thereof; and the undersigned, and each Surety Endorser, Guarantor or other party to this note, transfers, conveys and assigns to the Holder hereof, sufficient amount of any homestead or exemption that may be allowed to the undersigned, or either of them, including such homestead or exemption as may be set apart in bankruptcy, to pay this note in full, with all costs of collection; . . .

This clause is placed on the disclosure sheet with other clauses dealing with waiver.

Plaintiff also contends that the clause violates the Truth in Lending Act because it is unclear, confusing and misleading. That contention has not yet been treated by the Court.

The discussion of the issues shall be divided as follows:

1. THE EXEMPTION LAWS
2. THE WAIVER OF EXEMPTION
3. THE ASSIGNMENT OF EXEMPTION
4. TRUTH IN LENDING LAW

## 1. THE EXEMPTION LAWS

The Georgia Constitution provides that a head of a household and certain others may claim the privilege of exempting from levy and sale real or personal property up to a value of $1,600.00. It further provides that the Georgia legislature has the authority to provide the manner of exempting this property and to provide for the waiver of this exemption. Ga.Code Ann. § 2–7601.

Pursuant to the authority expressed in this section of the Georgia Constitution, the Georgia legislature has enacted laws dealing with the exemption. It provides for a ramified method of having the court of ordinary set apart the exemption. Ga.Code Ann., tit. 51; 14 Encyc. Ga. Law, Homestead Exemption.

The federal courts provide an interesting glimpse into the nature of and reasons for the Georgia exemption laws. The difference between homestead and exemption is pointed out in In re Trammel, 5 F.2d 326 (N.D.Ga.1925, Sibley, D. J.), and the Georgia law is properly characterized as providing for an exemption, rather than a homestead. In Gunn v. Barry, 15 Wall. 610, 21 L.Ed. 212 (1872), the Supreme Court trenchantly revealed the reasons for the enactment of the Georgia exemption laws during the economic disasters that were occasioned by the War Between the States.

The state law provides the only exemption law in Georgia. There is no federal exemption law. Bankruptcy law does not provide for a uniform federal exemption. Rather, Section 6 of the Bankruptcy Act provides that the state exemption law will be recognized in bankruptcy. 11 U.S.C. § 24. The bankruptcy court can set aside exempt property even if it has not been set aside by the court of ordinary in the manner described by state law. In re Camp, 91 F. 745 (N.D.Ga.1899); In re Trammel, 5 F.2d 326 (N.D.Ga.1925) (Sibley, D. J.).

## 2. THE WAIVER OF EXEMPTION

The waiver of exemption rights is expressly authorized by the Georgia Constitution. Ga.Code Ann. § 2–7601. Pursuant to the authority conferred by the Constitution, Ga.Code Ann. § 51–1101 provides for such a waiver, except for wearing apparel and certain furniture of a value of $300.00. That code section provides:

Any debtor may, except as to wearing apparel and $300 worth of household and kitchen furniture and provisions, waive or renounce his right to the benefit of the exemption provided for in the Constitution and laws of this State, by a waiver,

either general or specific, in writing, simply stating that he does so waive or renounce such right, which waiver may be stated in the contract of indebtedness or contemporaneously therewith or subsequently thereto in a separate paper.

The policy behind this, as stated in *Kronstadt v. Citizens and Southern National Bank*, 80 F.2d 260, 264 (5th Cir. 1935), is to permit a hard pressed debtor to use his exemption to obtain credit which in his extremity, may save him.

To waive an exemption is certainly somewhat akin to conveying property. Thus, in *Tribble v. Anderson*, 63 Ga. 32 (1879), the question arose whether a waiver of homestead is effective if given in a usurious contract. The court agreed that the waiver of homestead was not a conveyance but (at page 55) stated:

> [I]t is enough in the nature of a quitclaim title to be subject to the general rule ordained by statute against passing any kind of title to property for a usurious purpose or as part of a usurious contract. The homestead right is a right in property, and to waive it in favor of a creditor is substantially the same thing as to convey it away—the same, certainly, in respect to putting the debtor in the power of the creditor.

However, the authorities are unanimous that a waiver of exemption although in the nature of a conveyance does not convey title or create a lien. In *Lockwood v. Exchange Bank*, 190 U.S. 294, 23 S.Ct. 751, 47 L.Ed. 1061 (1902), the United States Supreme Court considered the rights of a creditor holding notes waiving homestead and exemption. The question was whether such creditors had any right that the bankruptcy court could protect. The trustee had set aside the exempt property. These creditors wanted the bankruptcy court to distribute the otherwise exempt property to them. The Supreme Court held that the bankruptcy court had no jurisdiction over exempt property. The court held that the trustee had the duty to turn over exempt property to the debtor. The creditor was relegated to seek a state court receiver of the proper-

ty set aside as exempt by the bankruptcy court. The court stated that the creditor holding waiver notes had "no lien" but "an equity" entitling him to reasonable postponement of the setting aside in order to institute state court actions to make effective his rights.

The principles of the *Lockwood* case came before the Georgia Supreme Court in *Bell v. Dawson Co.*, 120 Ga. 628, 48 S.E. 150 (1904). A creditor holding waiver notes sought a state court receiver to take charge of the property set aside to the debtor. This was in accord with the suggestion in *Lockwood* that the creditor present to the state court his "equity," which could not be recognized by the bankruptcy court. The question before the Georgia Supreme Court was whether the creditor was entitled to the appointment of a state court receiver. The court noted the general rule was that a court of equity will not appoint a receiver except on the petition of one claiming title or having a lien. The court assumed that this general rule would preclude the appointment of a receiver. But the court made an exception to that rule because the creditor had no remedy at law and because the exempt property was "in the nature of a security for the payment of the debt."

The Georgia Supreme Court has remained clear that the holder of a note waiving homestead does not have a lien. In *Bowen & Thomas v. Keller*, 130 Ga. 31, 60 S.E. 174 (1907), the action by creditors holding waiver notes:

> hinges on the question whether the plaintiffs in error had acquired any lien which, after the discharge in bankruptcy of the defendant in error had been obtained and pleaded, was enforceable against the exemption set apart in bankruptcy and held by the receiver of the state court.

The court held there was no lien, not even an equitable lien. The court said:

> We can conceive of no rule of law, or principle of justice, which could be invoked as sustaining the plaintiff's contention that a lien in their favor existed against the fund in the possession of the court. . . . the only advantage the

. . . creditors holding waiver notes had over general creditors was to prevail in the collection of their debts as against any claim of homestead or exemption which the defendant in error might assert.

This was repeated in *Coffey v. Mitchell,* 139 Ga. 430, 77 S.E. 561 (1912), where the court said:

The mere fact that a creditor holds the note of his debtor, which contains a waiver of exemption rights, does not give the creditor any lien, equitable or otherwise, on property of the debtor which he has scheduled in bankruptcy and asked that it be set apart as exempt. See *Bowen v. Keller,* 130 Ga. 31, 34, 60 S.E. 174, 124 Am.St.R. 164.

This headnote was quoted as the law in *Coppedge v. Bruce,* 177 Ga. 277, 170 S.E. 35 (1933). This principle was reiterated in *Massachusetts Mutual Life Insurance Co. v. Hirsch,* 184 Ga. 636, 192 S.E. 435 (1937), where the court distinguishing the effect of a waiver of homestead and an assignment of homestead, said:

A mere waiver of homestead or exemption contained in a note or other obligation in favor of a creditor does not give him any title, right, or lien, equitable or otherwise, on property of the debtor subsequently set apart to him in bankruptcy as exempt, such as would invalidate or defeat a valid assignment of such homestead or exemption subsequent to such waiver and prior to the bankruptcy.

The nature of the claim of the holder of a waiver note was described in *In re Meredith,* 144 F. 230 (N.D.Ga.1906)). There the court considered the question left open in *Lockwood v. Exchange Bank, supra,* whether the creditors holding waiver notes and thus having a claim against exempt assets could delay the bankruptcy proceedings until they could in state court get there share of the exempt property and then come into the bankruptcy court and participate with other unsecured creditors. The court noted that Section 57 of the Bankruptcy Act provides a means for secured creditors to have his security evaluat-

ed and thus establish quickly to what extent his claim is unsecured. The court said:

While the creditors having notes with waiver of homestead and exemption have no lien, they have a peculiar claim against this special property, which the general creditors have not.

The court went on to quote from *Bell v. Dawson Co.,* 120 Ga. 628, 48 S.E. 150, that:

The waiver becomes in the nature of a security, in that the debt may be made out of property owned by the debtor, without regard to any exemption rights which the debtor would have had but for the waiver.

The court concluded that the interest of the creditor holding a waiver note in the exempt property would be evaluated as would be the interest of a secured creditor in secured property.

The nature of the waiver of homestead is best explicated by the Fifth Circuit in *Kronstadt v. Citizens and Southern National Bank,* 80 F.2d 260, 262–63 (5th Cir. 1935):

Appellant admits that under the Constitution and laws of Georgia a creditor of a bankrupt who holds a note containing a waiver of exemption is, as to the exemption claimed by and set apart to the bankrupt, in a preferred position as to general creditors. Such a creditor may make his debt out of the exemption allowed the bankrupt, and neither the bankrupt nor the general creditor may complain. . .

.     .     .     .     .

Under the laws of Georgia a creditor holding a waiver note is in a position to satisfy his debt out of exempted property actually claimed by and set apart to the bankrupt. It confers no lien; it conveys no right in the exemption [citations]. Thus a creditor holding a general waiver has no interest in or title to the exemption; no right to have any property set aside to him, but only the right to insist that the bankrupt, after the exemption in bankruptcy has been set aside, claim it against him.

The discussion in *Kronstadt v. Citizens and Southern National Bank* was called excellent in Collier, Bankruptcy, § 6.10, note 13 (14th Ed.). Later in that Section, citing *Kronstadt*, Collier goes on to conclusion:

> While state law will determine whether a waiver-note creates a lien or conveys an estate to the creditor, where it contains nothing more than a mere waiver of exemption the usual rule is that no lien or estate is created in the creditor's favor.

Thus, the waiver of exemption appears not to create a security interest. The waiver has been regarded as in the nature of a quitclaim or security interest, but the courts are unanimous in stating that it transfers no title and creates no lien.

## 3. THE ASSIGNMENT OF EXEMPTION

The assignment of exemption is not expressly authorized by the Georgia Statute, as is the waiver of exemption. The assignment clause was developed in disputes between creditors for priority, when one creditor held a waiver of homestead and another creditor held a subsequently executed assignment of exemption. Often in the early cases, the assignment would be given while the debtor was insolvent, had filed or was about to file a bankruptcy petition, with the intent of preferring the creditor to whom it was given over the creditor holding the earlier waiver of homestead. It was not then fraudulent or an otherwise vicious defeat or hindrance to creditors to so prefer a creditor. *Taylor Company v. Williams,* 139 Ga. 581, 77 S.E. 386 (1912); *Strickland Hardware Co. v. Fletcher,* 152 Ga. 445, 110 S.E. 229 (1921). A transfer preferring a creditor was fraudulent only if the insolvent debtor was to receive some fresh consideration for the transfer. *E. g., Pincus v. Meinland,* 139 Ga. 365, 77 S.E. 82 (1912); *Silver & Goldstein v. Chapman,* 161 Ga. 203, 129 S.E. 842 (1925). In these disputes between the creditor holding a waiver of exemption and the creditor holding a subsequent assignment of exemption, the creditor holding the assignment often won.

These cases developed the extent to which the exemption was assignable. The rationale for holding the assignment valid was that title to property claimed as exempt never passes to the trustee but remains in the bankrupt, who could transfer it.

> The title being in the bankrupt, he can alienate the property set apart by the bankruptcy court before such time as he applies for and obtains a homestead and exemption . . . . It appears from the authorities above cited, that at the time the defendant sold the property set apart as exempt by the bankruptcy court . . . he had a right to sell [it] . . . .

*Pincus v. Meinhard & Brother,* 139 Ga. 365, 77 S.E. 82 (1912). Each succeeding case validated an earlier assignment. In *Pincus v. Meinhard* it was held that the bankrupt could assign his interest in exempt property after the bankruptcy court had entered an order approving the trustee's report setting apart the exempt property. In *Taylor Company v. Williams,* 139 Ga. 581, 77 S.E. 386 (1912), it was held that the bankrupt could assign his interest in exempt property after the trustee had made his report setting apart the exempt property but before the bankruptcy court had approved it. In *Strickland Hardware Co. v. Fletcher,* 152 Ga. 445, 110 S.E. 229 (1921), it was held that the bankrupt could assign his interest in exempt property after he was adjudicated a bankrupt but before the trustee had made his report setting aside the exempt property and therefore before the court had approved such a report.

The first reported case in which a creditor took an assignment of homestead at the same time he took the waiver of homestead was *Saul v. Bower,* 155 Ga. 450, 117 S.E. 86 (1923). The language of the waiver and assignment in that case was virtually identical to the case at bar. The question as presented by the court was:

> Was the assignment of the homestead and exemption, made prior to the time the exemption was set aside by the referee in bankruptcy, such a bare contingency

or possibility that it can not be the subject of transfer and sale, under the Civil Code (1910), § 4117? That section declares that—"A bare contingency or possibility can not be the subject of sale, unless there exists a present right in the person selling, to a future benefit."

The court held that the right was assignable. The court reasoned that since the privilege of claiming the exemption can be waived and since *Tribble v. Anderson,* 63 Ga. 32 (1879) characterized the waiver as in the nature of a conveyance, the privilege should also be assignable. The court said at page 456 of 155 Ga., at page 89 of 117 S.E.:

> A general waiver of homestead is sufficient as a waiver [citation]; and, if a general waiver of a homestead is good, we see no reason why the transfer or assignment of a homestead is not good. . . . We are of the opinion that this assignment is not a bare contingency or possibility, but that the assignor is conveying what the law makes certain, and that is $1600 of his property under the constitutional homestead, or certain specified property which is named in the statutory homestead.

The court did not discuss the seeming inconsistency of holding that a debtor could assign a privilege that he had waived.

Distinctions between the assignment and the waiver have been noted in several cases. In *Southern Wholesale Corp. v. Pincus,* 173 Ga. 421, 160 S.E. 377 (1931), it was stated that the assignment rests on different principles than the waiver. The difference on principles was not explained, but presumably the difference is that the assignment is more in the nature of a conveyance creating a security interest. The court noted one situation where the assignment would afford the creditor greater rights against the debtor than would be afforded by the waiver. That is the situation where the assignment or waiver is given when the creditor opens a general account. A waiver is effective only for the credit extended immediately on the opening of the account while the assignment is effective as against credit subsequently extended on the account.

Although the assignment takes the form of a secured conveyance, the assignment of an exemption before an exemption is claimed clearly does not create a proper security interest, either in real estate or personal property. The reason is that the assignment does not sufficiently describe the property that may become exempt. In *In re Martin,* 294 F. 368 (N.D.Ga.1923) (Sibley, D. J.), the court was dealing with a waiver note. The court said (at page 370):

> His paper does not purport to transfer any specified property as security; but if it did, and although antedating the bankruptcy more than four months, for want of record and sufficient description of the property conveyed, it would fail.

The assignment of an exemption would wholly fail to create a security interest in real estate under Georgia recording laws. Ga.Code Ann. §§ 67–102; 29–104; *Crawford v. Verner,* 122 Ga. 814, 50 S.E. 958 (1905); *Commodity Credit Corp. v. Wells,* 188 Ga. 287, 3 S.E.2d 642 (1939); *Jaffrey v. Brown,* 29 F. 476 (S.D.Ga.1886). And, the assignment of an exemption would wholly fail to create a security interest in personal property. The Uniform Commercial Code requires that the description of property reasonably identify what is described. Ga. Code Ann. §§ 109A–9–110, 9–203(1)(b). Furthermore, there is no statutory contemplation that the assignment of an exemption creates a security interest. The Uniform Commercial Code defines the secured transactions excluded from Article 9. Ga. Code Ann. § 109A–9–104. An assignment of an exemption is not among them. The Georgia Supreme Court has also stopped short of pronouncing the assignment of an exemption to be a proper security interest. In *Massachusetts Mutual Life Insurance Company v. Hirsch,* 184 Ga. 636, 192 S.E. 435 (1937), one party urged that the assignment was in effect a bill of sale to secure debt. The court ruled that the party's contention would fail "even if" it was.

An accurate characterization of the nature of an assignment of homestead is found in *Kronstadt v. Citizens and Southern National Bank,* 80 F.2d 260 (5th Cir.

1935). That case said that the assignment, when given before the setting apart of an exemption, conveys "an equitable, though inchoate interest, which becomes legal and fixed when it has been claimed and set apart." Based on this, the court held that a bankrupt could not defeat the holder of an assignment by withdrawing his claim to an exemption although he might have been able so to defeat a holder of a waiver.

The holding in *Kronstadt* was severely limited, if not nullified by *Novak v. O'Neal,* 201 F.2d 227 (5th Cir. 1953). That case held that a bankrupt could defeat the holder of an assignment by not claiming his exemption, just as he could so defeat the holder of a waiver.

But, *Novak v. O'Neal* characterized the nature of the assignment much like *Kronstadt.* In *Novak,* it was characterized as "only an inchoate estate which can never become perfected until such a claim is made by the bankrupt." Similarly, the court said that the assignment created an "equitable obligation."

The assignment of the exemption in this case takes from the debtor no rights not taken by the waiver. Since the transaction in this case is a loan, rather than an open account, the assignment's greater effectiveness with open accounts is immaterial. Also, the assignment appears to be as ineffective as the waiver in the taking from the debtor the privilege of claiming an exemption as to wearing apparel and certain furniture. This was so held by this District Court in a case appealed and reported under the name of *Leiter v. Steinbach,* 184 F.2d 751 (5th Cir. 1950). The Fifth Circuit stated that the District Court so held but decided the case on other grounds.

The additional rights afforded the creditor by taking the assignment in addition to the waiver are against other creditors. For example, in *Kronstadt v. Citizens & Southern National Bank, supra,* the question is whether the creditor holding the assignment will get the exempt property or whether the trustee will get it for general creditors. True, the debtor may indirectly benefit if one creditor wins over another and his granting the assignment can affect the outcome of the struggle, but this ability to affect the outcome is more a circumstance than a right.

In sum, the assignment taken in a note with the waiver of an exemption before the exemption is claimed does not create a proper security interest even though the assignment takes the form of a secured transaction. The description is insufficient for a security interest under real estate conveyances law and under Article 9 of the Uniform Commercial Code. The assignment takes from the debtor no rights not taken by the waiver. It helps the creditor in disputes with other creditors and creates what may be characterized as an equitable obligation or inchoate interest.

## 4. TRUTH IN LENDING LAW

The Truth in Lending Act requires the creditor to disclose a security interest. The Act does not define the term "security interest", but Regulation Z does. Regulation Z § 226.2(z) provides:

"Security interest" and "security" means any interest in property which secures payment or performance of an obligation. The terms include, but are not limited to, security interest under the Uniform Commercial Code, real property mortgages, deeds of trust, and other consensual or confessed liens, whether or not recorded, mechanic's, materialman's, artisan's, and other similar liens, vender's liens in both real and personal property, the interest of a seller in a contract for the sale of real property, any lien on property arising by operation of law, and any interest in a lease when used to secure property or performance of an obligation.

The administrative definition has been held to be a reasonable exercise of authority. *Charnita, Inc. v. Federal Trade Commission,* 479 F.2d 684 (3rd Cir. 1973).

The Regulation's definition of the term security interest does not have precise limits. It begins with a common definition, "any interest in property which secures payment or performance of an obligation."

This is substantially the same definition as is found in the Uniform Commercial Code. See Ga.Code Ann. § 109A–1–201(37). Yet the Regulation's definition goes on to state that it includes but is not limited to a security interest under the Uniform Commercial Code and other types of security interest.

Some guidance in determining the limits of the Regulation's definition of the term "security interest" can be found in staff opinion letter 1066, dated June 4, 1976, 5 CCH Consumer Credit Guide ¶ 31,406. That letter advises that a seller's right of reclamation under Section 2–702 of the Uniform Commercial Code need not be disclosed as a security interest. That letter comes as the authorities split on whether that right of reclamation is a statutory lien invalid in bankruptcy because it becomes effective on insolvency. *In re Wetson's Corp.,* 17 UCC Rep. Svc. 423 (Herzog, B. J.); 4 Collier Bankruptcy § 67.281.

That letter is not very helpful. But it is meaningful in recognizing that although there is no definite content to the term security interest, not every interest which can be considered a security interest is to be so considered under Regulation Z. Analogously, there is recognition that unnecessary disclosure may violate the Act by obscuring required disclosures. FRB Staff Opinion Letter 682, April 25, 1973.

The waiver and assignment of exemption in this note do not appear to create a security interest within the meaning of Regulation Z. They are not proper security interest under Georgia law. They amount basically to a waiver of the privilege of claiming the exemption. In accord with this, they are placed together with other waivers in this note. This is the typical way of viewing the so-called "waiver of homestead" in Georgia. No creditor holding such a waiver has ever regarded himself or been regarded as secured. Although the waiver of homestead is a discrete and well-known clause, discussed, for example, in 40 C.J.S. Homesteads § 179–186, the Federal Reserve Board has never indicated that its disclosure is required. It is not necessary to tell the debtor that if he does not pay a judgment may be obtained against him or repossession costs may be assessed. *Burrell v. City Dodge, Inc.,* C18739 (Hill, J., 1974). So it would seem unnecessary to tell him that he has waived any privilege that he might have of claiming an exemption of his property from a judicial levy and sale to satisfy a judgment.

Plaintiff also contends that the clause dealing with waiver and assignment of exemption is unclear, confusing and misleading. Plaintiff bases this contention on the fact that the clause does not disclose that the waiver and assignment is ineffective as to wearing apparel and certain furniture.

Any required disclosure must be clear. Regulation Z § 226.6(a). If these clauses are required to be disclosed they would appear to violate the Act because the state law limitation is not disclosed. *Cf. Pollock v. General Finance Co.,* 535 F.2d 295 (5th Cir. 1976). *Pollock* apparently nullifies the principle, set forth in *Barret v. Vernie Jones Ford,* 395 F.Supp. 904 (N.D.Ga.1975), that the creditor is required to disclose what rights he claims without regard to the enforceability of those rights.

But the clause dealing with waiver and assignment of exemption is not required to be disclosed. Therefore, it does not have to be clear, within the meaning of Regulation Z § 226.6(a).

Furthermore, the clause does not appear to be additional information, within the meaning of Regulation Z § 226.6(c). That section appears to refer to additional information supplied with any required disclosure by way of explaining or supplementing the required disclosure. FRB Staff Opinion Letter 682, April 25, 1973. It provides that additional information must not be misleading or confusing.

This clause does not mislead or confuse. It is separate from the required disclosures. It is legally comprehensible, in that the exact language has been expounded upon many times by the Georgia and federal courts. Therefore, plaintiff's contention that the clause is unclear or misleading is not well taken.

## C. USE OF TERM "TOTAL FINANCE CHARGE"

Plaintiff contends that defendant violated the Act by using the term "TOTAL FINANCE CHARGE," rather than "Total FINANCE CHARGE." This is contrary to *Bussey v. Georgia BankAmericard,* 516 F.2d 452 (5th Cir. 1975).

Plaintiff argues that *Bussey* was silently overruled by *Pennino v. Morris Kirschman & Co., Inc.,* 526 F.2d 367 (5th Cir. 1976). In that case (at page 370), the court quoted with approval a district court in Virginia which held the opposite of *Bussey.* But the quotation was only of a general principle of liability for technical violations. *Pennino* noted the holding in the quoted case, but *Pennino* did not have before it and consequently did not hold anything with respect to use of the term "TOTAL FINANCE CHARGE." Thus, it would be improper to regard *Pennino* as silently overruling the holding in *Bussey.*

## III. CONCLUSION

WHEREFORE, it is recommended that plaintiff's motion for reconsideration be denied. It is further recommended that plaintiff's request for a certificate of immediate review be denied, since this case can be quickly concluded.

This 15 day of September, 1976.

    s/ <u>Ezra H. Cohen</u>
      EZRA H. COHEN
      BANKRUPTCY JUDGE, Sitting as Special Master