Bill TRAVIS and Joyce Travis, Plaintiffs-Appellees Cross-Appellants,

v.

TRUST COMPANY BANK, Defendant-Appellant Cross-Appellee.

Joyce TRAVIS, Plaintiff-Appellee,

v.

TRUST COMPANY BANK, Defendant-Appellant.

Nos. 78–2812, 78–2890.

United States Court of Appeals, Fifth Circuit.

July 9, 1980.

Bernard Parks, Atlanta, Ga., for defendant-appellant cross-appellee.

Graydon W. Florence, Jr., Atlanta, Ga., for plaintiffs-appellees cross-appellants.

Before HATCHETT and TATE, Circuit Judges, and GROOMS,* District Judge.

GROOMS, District Judge:

These consolidated appeals are brought by the Trust Company Bank from final orders of the United States District Court for the Northern District of Georgia awarding each plaintiff $1,000.00, costs and attorney's fees of $900.00. Plaintiffs brought the original actions pursuant to the Truth-in-Lending provisions of the Federal Consumer Credit Protection Act, 15 U.S.C. § 1601, et seq. (TILA).

Appellees are husband and wife who have had a longstanding relationship with Appellant. On February 9, 1976, Joyce Travis entered into a loan transaction with Appellant; and on March 2, 1976, Bill Travis also entered into a loan transaction with Appellant. Later these two transactions were consolidated into a new loan agreement of August 13, 1976, executed by both Appellees. When Appellees were unable to meet the monthly obligation to Appellant, and to avoid default, this August 13th installment note was converted on November 4, 1976, into a 90-day note. On February 8, 1977, Joyce Travis filed her action alleging a TILA violation on the February 9, 1976, note. Shortly thereafter on February 23, 1977, both Joyce and Bill Travis filed the joint action alleging TILA violations on the March 2, August 13, and November 4, 1976, loan transactions.

The cases were referred to a bankruptcy judge as Special Master. While the recommendation of the Special Master was being considered by the district judge, *Elzea v. National Bank of Georgia*, 570 F.2d 1248 (5th Cir. 1978), was decided, holding that the assignment of a homestead exemption under the Georgia law was an assignment of a security interest and required disclosure under Regulation Z, 12 C.F.R. § 226.-8(b)(5).[1] Appellees thereupon filed second motions for summary judgment on April 19, 1978, alleging a new TILA violation based upon *Elzea*.

The district court did not address the questions raised by plaintiffs' and defendant's original cross-motions for summary judgment, but granted plaintiffs' second motions for summary judgment.

The primary issue on this appeal is whether *Elzea* should be applied prospectively under the tests for prospective application as enunciated in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). Appellant contends that the civil liability provisions of TILA do not apply when there is good faith reliance upon case law, and therefore, that *Elzea* should be applied prospectively only.

■ We conclude that since the assignment took place in these cases without proper disclosure, the district court was correct in finding for the Plaintiffs-Appellees. Furthermore, *Elzea* must be applied retroactively because Appellant, Trust Company Bank, failed to meet any of the three separate tests for prospective application as set forth in *Chevron*.

---

* District Judge of the Northern District of Alabama, sitting by designation.

1. This court applied *Elzea* in *Williams v. Blazer Financial Services, Inc.*, 598 F.2d 1371, decided July 23, 1979.

The first test for prospective application is whether the decision established a new principle of law either by overruling clear past precedent on which litigants may have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed. *Id.* at 106, 92 S.Ct. at 355. The Bank contends that it has consistently revised its disclosure forms in an attempt to comply with TILA as interpreted, and that in drafting its disclosure statement with respect to assignment of a homestead exemption, it relied upon clear past precedent. The precedent to which the Bank refers is *Mims v. Dixie Finance Corp.*, 426 F.Supp. 627 (N.D.Ga.1976) [en banc],[2] which held that the assignment of a homestead exemption was not a security interest under Regulation Z.[3] Appellant's reliance on the so-called "clear past precedent" of *Mims* is not sustainable. *Mims, supra,* was a November 4, 1976, decision. Yet the dates of the loan transactions with the *Elzea* violations were February 9, 1976, antedating the *Mims* decision, and November 4, 1976, the exact date of the *Mims* decision. There appears to be no way that Appellant could have relied on *Mims* in drafting the disclosure forms now in issue before this Court.

The Court in *Chevron* noted, with respect to the first test for prospective application, an alternative method for determining whether a decision establishes a new principle of law; namely, whether *Elzea* decided an issue of first impression whose resolution was not clearly foreshadowed. Appellant relies on *Kronstadt v. Citizens & Southern Nat. Bank of Savannah*, 80 F.2d 260 (5th Cir. 1935), and *Novak v. O'Neal*, 201 F.2d 227 (5th Cir. 1953), for the proposition that whether a creditor has a security interest is a matter of state law. Even if this were so, the disclosure required by 15 U.S.C. 1639(a)(8) and 12 C.F.R. 226.8(b)(5) is not limited to a security interest as determined by state law. If the security interest disclosures were limited to security interest as determined by state law, there could be a different result for each of the 50 states, thus thwarting the application of TILA as respects uniformity of meaningful disclosures.

Georgia has enacted the Uniform Commercial Code where the term "security interest" is defined as an interest in personal property which secures payment or performance. The Code itself does not define "personal property," but that term has been construed to mean any kind of property interest, whether tangible or intangible, choate or inchoate. See generally *Ga.Code Ann.* 109A–9–102 and 106, with respect to the broad scope of Article 9.

Regulation Z's definition of security interest includes, but is not limited to, security interests arising under the Uniform Commercial Code. 12 C.F.R. 226.2(gg). The Regulation's definition lists some interests in property that are security interests under state law, but lists certain interests which are not. The very broad coverage of the term "security interest" is found in the first sentence of the definition itself: "[A]ny interest in property which secures payment of an obligation." 12 C.F.R. 226.-2(gg). Clearly, then, even if a transfer and assignment of homestead and exemption rights were not a security interest under Georgia law, it would certainly fall within the TILA definition of security interest for disclosure purposes. A reasonable, prudent creditor should anticipate a ruling that a transfer and assignment of homestead and exemption rights is a security interest which must be disclosed under 15 U.S.C. 1639(a)(8) and 12 C.F.R. 226.8(b)(5).

The second test according to *Chevron* is whether retroactive operation of the rule in question will further or retard its operation. 404 U.S. 97, 106–107, 92 S.Ct. 349, 355–356, 30 L.Ed.2d 296. TILA was passed in 1968, after eight years of increasing Congressional concern about consumer ignorance of credit costs, to curtail unscrupulous and sharp creditor practices. *Smith v. Chapman*, 614 F.2d 968, at 971 (5th Cir. 1980).

**2.** Judges Edenfield, Henderson, Moye, O'Kelley, Freeman and Hill.

**3.** *Mims* was appealed to this Court in Case No. 77–2024, but the appeal was dismissed at the request of the parties in May, 1977.

With this purpose in mind, the Act has been found uniformly to be remedial in nature and thereby liberally and broadly construed in favor of the consumer. "TILA is primarily enforced through lawsuits filed by consumers acting as 'private attorneys general'." *Smith, supra,* at 971 citing *McGowan v. King, Inc.,* 569 F.2d 845, 849 (5th Cir. 1978). Exceptions to coverage, then, are to be strictly construed, and the Act must be construed so as to provide for more, rather than less, disclosures. The remedial scheme in TILA "is designed to deter generally illegalities which are only rarely uncovered and punished, and not just to compensate borrowers for their actual injuries in any particular case." *Williams v. Public Finance Corp.,* 598 F.2d 349, 356 (5th Cir. 1979). With the purposes of the Act in mind and to encourage consumers to come forward and assert the rights granted them by Congress, the Congressional purpose will be better served by having *Elzea* apply retroactively.

The third test of *Chevron* is whether inequitable results would arise if the *Elzea* holding is applied retroactively. Appellant asserts that it will suffer substantial harm if *Elzea* is so applied; and that it, as well as other creditors, would have exposure from "thousands of loan transactions with several thousands of consumers." There is nothing in the record to establish that any other claims have been made or that Appellant is involved in any other TILA actions. Further, any exposure Appellant may have is substantially reduced by the one year statute of limitations in 15 U.S.C. 1640. Since it appears that Appellant revised its forms as early as March 2, 1976, it is questionable whether the Bank has any exposure under this Court's *Elzea* holding except in these cases. In summary, the retroactive application of *Elzea* will not produce inequitable results not contemplated by Congress in enacting TILA.

We agree with the statement of the district court that "while the *Elzea* decision does change the law in the Northern District of Georgia, it does not alter longstanding law in the Fifth Circuit and cannot be said to overrule or depart from a previously controlling case in that court." Appellant has not met the tests established by *Chevron.*

## CROSS APPEAL

Plaintiffs, in Case 78–2812, filed a cross appeal from those aspects of the final judgment entered on July 19, 1978, granting Defendant's motion for summary judgment as to Counts One and Three of the complaint. Count One pertains to the loan transaction of August 13, 1976, and Count Three to the March 2, 1976 transaction.

Cross-Appellants contend that the following TILA violations occurred: (1) that in regard to the transaction of August 13, 1976, the Bank failed to properly disclose the amount of credit of which the borrower had the use; and (2) that the Bank understated the finance charge by the amount of the credit insurance premium; (3) that in regard to both the transactions of March 2, and August 13, 1976, the Bank disclosed an assessment of a "prepayment penalty" in the event of prepayment, rather than correctly identifying the method of rebate.

The district court did not discuss these alleged violations when it ruled on the recommendation of the Special Master that summary judgment be granted on Defendant's motion as to Counts One and Three. After reviewing the record, we agree with the conclusion of the Special Master that there are no substantive TILA violations.

Accordingly, we AFFIRM on direct appeals and AFFIRM on cross appeal.