**Geneva ECTOR, Plaintiff,**

v.

**SOUTHERN DISCOUNT COMPANY, Defendant.**

**Civ. A. No. C78–899A.**

United States District Court, N. D. Georgia, Atlanta Division.

Sept. 15, 1980.

As Corrected Jan. 17, 1981.

Frank L. Derrickson, Dwight Bowen, Atlanta, Ga., for plaintiff.

John E. Tomlinson, J. Lamar Nix, Tomlinson & Nix, Atlanta, Ga., for defendant.

## ORDER OF COURT

MOYE, Chief Judge.

Presently before the Court are the report and recommendation of United States Magistrate J. Owen Forrester and the parties' responses thereto. The magistrate recommends that the plaintiff's motion for summary judgment be denied. Although several difficult issues are presented, the Court APPROVES the recommendation that plaintiff's motion for summary judgment be DENIED and ADOPTS it as the order of the Court. The facts pertinent to each issue are set forth in connection with the individual discussion of the issue to which they pertain.

I. DISCLOSURE OF GEORGIA LOAN FEES IN CONNECTION WITH COMPUTATION OF PREPAID FINANCE CHARGE

The most difficult issue presented to the Court concerns the allegation that the de-

fendant violated the Truth in Lending Act by making the following disclosure: [1]

1. Amount Financed . . . . . . . . . . . . . . . . . . . . . . . . $_____
2. FINANCE CHARGE (See 4 below) . . . . . . . . . $_____
3. Total of Payments (1 plus 2) . . . . . . . . . . . . . . . $_____
  ANNUAL PERCENTAGE RATE . . . . . . . . . . . . ._____%
  First payment due . . . . . . . . . Final payment due_____
  (Other payments due the same dates each month)
4. Details of Finance Charges calculated in accordance with the Provisions of Section 15 as amended of the Georgia Industrial Loan Act:
  a) Maintenance Charges . . . . . . . . . . . . . . . . . . $_____
  b) Interest .     . . . . . . . . . . . . . . . . . . . . . . . $_____
  c) 8% Fee . . . . . . . . . . . . . . . . . . $_____
  d) 4% Fee . . . . . . . . . . . . . . . . . . $_____
  e) Prepaid Finance Charge (c + d) . . . . . . . . . $_____
  f) Finance Charge (a + b + e) . . . . . . . . . . . $_____
5. Face amount of Contract (3 minus 4(a)) . . . . . . $_____

In particular, plaintiff contends that the disclosures of loan "fees" in parts 4(c) and (d) of the disclosure statement is a disclosure made pursuant to Georgia state law which is inconsistent with the Truth in Lending Act.[2]

The regulations adopted by The Federal Reserve Board pursuant to 15 U.S.C. § 1604 require the lender to disclose the "prepaid finance charge." Regulation Z, 12 C.F.R. § 226.8(d)(3). In Georgia a consumer lender may exact loan fees of not more than 8% of the first $600 of the face amount of the contract plus 4% of any excess, Ga.Code Ann. § 25–315(b), and such charges, if made, must be disclosed in the truth in lending disclosure statements as a prepaid finance charge. *Jones v. Community Loan & Inv't Corp.*, 526 F.2d 642, *aff'd on rehearing,* 544 F.2d 1228 (5th Cir. 1976).[3] Georgia law also requires the disclosure of any loan fees charged. Ga. Code Ann. § 25–319.

Several cases in this district have dealt with alleged truth in lending violations arising out of lenders' attempts simultaneously to satisfy Regulation Z as interpreted by *Jones* and Ga. Code Ann. § 25–319. The issue is controlled in large part by Regulation Z, 12 C.F.R. § 226.6:

(a) Disclosures; general rule. The disclosures required to be given by this part shall be made clearly, conspicuously, in meaningful sequence, in accordance with the further requirements of this section, and at the time and in the terminology prescribed in applicable sections.

   .     .     .     .     .

(b) Inconsistent State Requirements. (1) With respect to the requirements of this part, State law is inconsistent with the requirements of the Act [section 1601 et seq. of this title] and this part, within the meaning of section 111(a) of the Act [section 1610(a) of this title] to the extent that it:

(i) Requires a creditor to make disclosures or take actions different from the requirements of this part with respect to form, content, terminology, or time of delivery. . . .

   .     .     .     .     .

(c) Additional information. At the creditor's or lessor's option, additional information or explanations may be supplied with any disclosure required by this part, but none shall be stated, utilized, or placed so as to mislead or confuse the customer or lessee or contradict, obscure, or detract attention from the information required by this part to be disclosed. Any creditor or lessor who elects to make disclosures specified in any provision of State law which, under paragraph (b) of this section, is inconsistent with the requirements of the Act [section 1601 et seq. of this title] and this part may

(1) Make such inconsistent disclosures on a separate paper apart from the disclosures made pursuant to this part, or

(2) Make such inconsistent disclosures on the same statement on which disclosures required by this part are made; provided:

1. This identical format was employed in both transactions involved here.

2. This is the issue presented in the preliminary statement of issues filed pursuant to Magistrate Forrester's order of June 15, 1978. Other, very similar issues, are considered herein. Those related issues have been briefed by the parties, without objection to the expansion of issues,

and thus any objection which could have been made has been waived.

3. In *Jones* the lender did not include the loan fees even in the amount of the prepaid finance charge and this was held to be a violation. The court did not address the question presently before this Court or the question alluded to in note 4 *infra*.

(i) All disclosures required by this part appear separately and above any other disclosures,

(ii) Disclosures required by this part are identified by a clear and conspicuous heading indicating that they are made in compliance with Federal law, and

(iii) All inconsistent disclosures appear separately and below a conspicuous demarcation line, and are identified by a clear and conspicuous heading indicating that the statements made thereafter are inconsistent with the disclosure requirements of the Federal Truth in Lending Act.

The first case in this district in which a violation was found under circumstances similar to these was *Ford v. General Finance Corp.*, No. C78–328A (N.D.Ga. June 5, 1979) (Edenfield, J.) (motion for reconsideration denied July 17, 1980). The defendant in *Ford* used the words "PREPAID FINANCE CHARGES/LOAN FEES" in its disclosure. Judge Edenfield ruled that such a disclosure violated the requirement in 12 C.F.R. § 226.6(a) that disclosures be made "in the terminology prescribed in the applicable sections."

In *Gresham v. Termplan, Inc.*, 480 F.Supp. 149 (N.D.Ga.1979) (Tidwell, J.) (motions for reconsideration denied January 18, 1980 and January 24, 1980), a different rationale was employed. In *Gresham* the defendant disclosed the loan fees in two separate ways. It set forth the prepaid finance charge as follows:

PREPAID FINANCE CHARGE
LOAN FEE          LOAN FEE
NONE           $33.60

In addition, "in compliance with 12 C.F.R. § 226.6(c)(2)(iii), defendant placed a conspicuous demarcation line on its form with the words, 'STATE DISCLOSURES THAT ARE INCONSISTENT WITH THE FEDERAL TRUTH IN LENDING ACT,' immediately below it," and in that section of its form set forth the following:

| LOAN FEE | (4%) | $ | NONE |
| LOAN FEE | (8%) | $ | 33.60 |

In the first step of his analysis, Judge Tidwell stated: "State law is inconsistent with the requirements of the Truth in Lending Act to the extent that it requires the creditor to make disclosures different from the federal requirements with respect to form or terminology. 12 C.F.R. § 226.6(b)(1)(i)." He then concluded that the "inclusion of the terms 'LOAN FEE' in the federal disclosure format, in the manner displayed by Defendants in this case, is in violation of 12 C.F.R. § 226.6(c)[2](i) and (ii)."

In *Flemings v. General Finance Corp.*, C78–719A (N.D.Ga. December 12, 1979) (Edenfield, J.) the Court found a violation on another basis. There the defendant General Finance apparently used the same language it had used in the *Ford* case. Judge Edenfield first cited *Ford* and then proceeded to adopt the following reasoning of the magistrate in *Ford* :

[T]he addition of the word "LOAN FEES" is an inclusion of state law terms. The regulations at 12 C.F.R. § 226.6(a) mandate that "The disclosures required to be given by this part shall be made . . . in the terminology prescribed in the applicable sections.". . . [T]he regulations permit the creditor at his option to add additional information or explain, but none shall be stated, utilized or placed so as to mislead or confuse the customer or contradict, obscure or detract attention from the information required. 12 C.F.R. § 226.6(c). The addition of the words "LOAN FEES" might be confusing and misleading to a customer, and in the Magistrate's opinion, they detract from the information required. . . . The Magistrate is persuaded that the better policy is to insist upon utilization of the precise required terminology unfettered by further explanation or state law terminology. While this may have the tendency of stifling our cherished individualism and lengthening disclosures by requiring the use of other terminology elsewhere, it is seen as having overriding benefits. First, compliance is made easier if it is understood that the law requires precision. Obviously, enforcement is facilitated as clear, black and white choices will be presented only. Finally, and this is the

heart of the matter, comparisons by consumers are facilitated when terminology is standardized. If one loan company uses only the terminology required by the regulation, while the instant defendant uses that terminology or approximately that terminology and couples it with additional words, then the defendant may gain an advantage because it may appear to the reasonably uninformed consumer that more things are being paid for by the dollar amount shown in the block, and, therefore, the company who complies exactly with the Act is penalized. Gaining an advantage on one's competitors is not against the law, but doing so by confusing them is. The term "Loan Fees" is in no wise synonymous with the term "Prepaid Finance Charge" to any but those most familiar with this arcane area of the law. The term in general application could be thought to include finder's fees, closing costs, official fees, notary fees, maintenance charges, recording charges, and even certain types of insurance. These are to be itemized separately, and any indication that any of these might be included at the point where the prepaid finance charge is disclosed is to contradict, obscure and detract attention from the required information in violation of 12 U.S.C. § 226.6(c).

Thus, at least three different bases have been employed in finding a violation in a lender's attempt simultaneously to satisfy Regulation Z as interpreted by *Jones* and Ga. Code Ann. § 25–319. In *Ford* Judge Edenfield ruled that the defendant violated the requirement of 12 C.F.R. § 226.6(a) that disclosures be made "in the terminology prescribed in applicable parts." In *Gresham* Judge Tidwell found that the use of "loan fee" in connection with the federally required disclosure of the prepaid finance charge violated 12 C.F.R. § 226.6(c)(2)(i) and (ii) requiring clearly demarcated, separate disclosure of inconsistent state required disclosures. *Accord, Parks v. U. S. Life & Credit Corp.*, No. C73–61N (N.D.Ga. March 13, 1980) (Tidwell, J.); *Clifton v. American Finance System*, No. C78–301A (N.D.Ga. February 11, 1980) (Freeman, J.), *vac'd and remanded* May 15, 1980. Finally, in *Flemings* Judge Edenfield concluded that combining "loan fee" with "prepaid finance charge" was confusing and a violation of 12 C.F.R. § 226.6(c).

Other judges in this district have made rulings contrary to those previously discussed. In the first case to discuss this issue, *Smith v. World Finance Corp.*, C77–12 G (N.D.Ga. July 13, 1978), Judge O'Kelley refused to accept the magistrate's conclusion that the use of "loan fee" and "prepaid finance charge" in the federal disclosure is confusing:

> In *Jones v. Community Loan & Investment Corp.*, 526 F.2d 642 (5th Cir. 1976), the court required that a loan fee be described or labeled a prepaid finance charge. It did not require that only the words "prepaid finance charge" appear. Instead, it required only that the loan fee be also labeled as a prepaid finance charge.

Judge O'Kelley did find a violation, however, because the second page of the disclosure form "state[d] the prepaid finance charge as zero in clear contradiction of the previous page."

More recently, Judge Shoob declined to follow *Clifton* (it had not yet been vacated and remanded), *Flemings, Gresham,* and *Ford. Blalock v. Aetna Finance Co.*, C79–666A (N.D.Ga. March 31, 1980) (motion for reconsideration denied July 21, 1980). The disclosure at issue in *Blalock* appeared as follows:

PREPAID FINANCE CHARGE
4% FEE(A)          8% FEE(B)
$10.76             $48.00

First, Judge Shoob found "the terms '4% FEE(A)' and '8% FEE(B)' to be additional or explanatory material and not terms specified in inconsistent state law. This finding is based on the Court's construction of 12 C.F.R. § 226.6(b)(1)(i)." He then reasoned as follows:

> The Federal Reserve Board is empowered by the Truth in Lending Act to prescribe regulations to carry out the purpose of the act, 15 U.S.C. § 1604, and

its regulations must be construed to further the purpose of truth in lending law. The purpose of the Truth in Lending Act relevant to this action is

> to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit
>
> . . .

15 U.S.C. § 1601(a). ˙ This Court construes 12 C.F.R. § 226.6(b)(1)(i) to mean that state law is inconsistent with the requirements of truth in lending law when it requires the use of terminology enough different from that required by federal law that it would prevent a meaningful disclosure of credit terms and contribute to the uninformed use of credit. Otherwise the state law terminology is "additional information" or "explanations" as contemplated in 12 C.F.R. § 226.6(c).

The terms "4% FEE(A)" and "8% FEE(B)" are not so different from the terminology "prepaid finance charge" to prevent a meaningful disclosure of credit terms or to contribute to the uninformed use of credit. Instead the terms are found to be explanations of the state law charges that comprise the prepaid finance charge. The manner in which such explanations must be disclosed is set forth at 12 C.F.R. § 226.6(c). The explanations must not be stated, utilized or placed so as to mislead or confuse the customer or to contradict, obscure or detract attention from the information required by truth in lending law. Defendant's disclosure of the explanatory material meets this requirement.

Judge Evans has distinguished *Ford* and *Gresham. Spruill v. Trust Company Bank*, C79–300A (N.D.Ga. June 10, 1980). The disclosure at issue before her was in the form of "prepaid finance charge (loan fee)." First, she easily disposed of the "inconsistent requirements issue" by noting that the parties agreed that the defendant's loan in question was not governed by Ga. Code Ann. § 25–319. She then concluded that

"(loan fee)" following "prepaid˙ finance charge" constitutes additional explanatory information that would not mislead or confuse the credit customer nor would it contradict, obscure or detract attention from the information disclosed. In fact, such additional information should benefit the average credit customer by giving meaning to the term "prepaid finance charge."

The only other authority in this district on the issue before this court is Judge Freeman's remand order in *Clifton*. In that order he directed the magistrate to reconsider the matter in light of two Federal Reserve Board opinion letters and the recent opinion of the United States Supreme Court in *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980). The effect of any of those letters and/or the *Milhollin* opinion is also before the Court in *Humphrey v. Beneficial Finance Co.*, C80–134A (assigned to Judge Ward, presently before Magistrate Feldman for report and recommendation).

In the instant case Magistrate Forrester concludes that the terms "8% Fee" and "4% Fee" are not inconsistent with federal disclosure requirements:

> Section 319 of the Georgia Industrial Loan Act, Ga. Code Ann. § 25–319, requires the lender to disclose the amount of interest and fees to the borrower. Section 315(b) of GILA authorizes the lender to charge an eight percent fee on the first $600 of the loan and four percent on the remainder. Neither section, however, requires the lender to use the specific terminology of "fee" or "loan fee" for making the disclosure. Only the amounts of these fees are required to be disclosed. Therefore, it is the conclusion of the Magistrate that while these disclosures of the eight percent fee and the four percent fee represent an attempt to comply with the requirements of Ga. Code Ann. §§ 25–315(b) and 319, they are not inconsistent required state disclosures within the meaning of 12 C.F.R. § 226.-6(b)(1)(i). *But see, Clifton v. American Finance System of Georgia*, Civil Action

No. 78–301A (N.D.Ga., February 11, 1980) (Freeman, J.).

He distinguishes *Gresham, Ford,* and the first order in *Clifton,* as follows:

> Since the separate disclosures of the four percent fee and the eight percent fee are above and to the left of the disclosure of the total prepaid finance charge, the Magistrate finds that this disclosure is not confusing or misleading and that the placement of the separate terms above the prepaid finance charge does not detract from the required Truth–in–Lending disclosure. In this respect, the Magistrate finds this kind of disclosure distinguishable from that at issue in *Gresham v. Termplan, Inc.,* 480 F.Supp. 149 (N.D. Ga., 1979) (Tidwell, J.) (disclosure of prepaid finance charge and separate loan fees in the same block), that in *Ford v. General Finance Corp. of Georgia,* Civil Action No. C78–328A (N.D.Ga., June 5, 1979) (Edenfield, J.) (disclosure of prepaid finance charges/loan fees on the same line), and that in *Clifton v. American Finance System of Georgia, supra* (disclosure of "FEE $ at 8%____ at 4% ____ (Prepaid Finance Chg.)" on the same line).

■ The undersigned agrees with Magistrate Forrester that the use of "fee" or "loan fee" is not an inconsistent term required by state law.[4] The state law, found in Ga. Code Ann. § 25–319, has no requirements "with respect to form, content, terminology, or time of delivery."[5] Regulation Z, 12 C.F.R. § 226.6(b)(1)(i). The Georgia statute requires only that the disclosure of "the amount of interest and fees" be made in writing, in English, and in clear terms.

■ Since the terms "fee" and "loan fee" are not "inconsistent" they are "additional" and must be viewed under 12 C.F.R. § 226.-6(c). The Court agrees with the magistrate that the disclosure at issue is not confusing or misleading; nor does it contradict, obscure or detract from the disclosure of the prepaid finance charge. Indeed, at least where the fees are set off to the left, clearly described, and then added, as they are here, the Court believes that the additional information provided may be helpful to the borrower by informing him of what makes up the prepaid finance charge. *See Spruill, supra.* Because Regulation Z expressly allows for "additional" terms, the Court declines to follow *Ford, supra.*

The Court has, of course, earlier rejected the argument that Regulation Z requires the lender in every instance to add the loan fees. *Carroll v. Termplan Inc.,* 476 F.Supp. 727 (N.D.Ga.1979) (Moye, J.). *Accord, Brown v. Termplan, Inc.,* C78–330A (N.D.Ga. November 1, 1979) (Freeman, J.); *Gaines v. Termplan, Inc.,* C78–1023A (N.D.Ga. September 12, 1979) (Vining, J.). Nothing herein is intended to alter the Court's previous ruling on that issue. Nevertheless, adding the fees is surely permitted, and adding them is one way to make the use of the additional terms "fees"

---

4. The separate disclosure of a loan fee charged pursuant to Ga. Code Ann. § 25–319 and description of such a fee as a "fee" or "loan fee" may be *required* by Regulation Z, 12 C.F.R. § 226.8(d)(3) requiring disclosure of:

> Except in the case of a loan secured by a first lien or equivalent security interest on a dwelling and made to finance the purchase of that dwelling, the total amount of the finance charge, with description of each amount included, using the term "finance charge."

The effect, if any, of that section on this case has not been briefed. Accordingly, the Court intends no opinion with respect to any such effect. If that section does, in fact, require separate disclosure of the loan fees and description as such, then the Court believes the conclusion reached herein would be further strengthened.

5. Ga. Code Ann. § 25–319 provides:

> At the time the loan is made, each licensee hereunder shall deliver to the borrower, or if there be two or more, to one of them, a copy of the loan contract or a written itemized statement in the English language showing in clear terms, the date and amount of the loan; a schedule of the payments or a description thereof; the type of security for the loan, the licensee's name and address; the actual cash advanced to or on behalf of the borrower; the amount of each class of insurance carried and the premiums paid thereon and the amount of interest and fees. Each licensee shall give a receipt for every cash payment made.

or "loan fees" more meaningful and less likely to run afoul of the requirements of 12 C.F.R. § 226.6(c).

Defendant has made one argument which no judge in the district has discussed. The defendant maintains that Federal Reserve Board Public Opinion Letter, December 6, 1976, Cons. Cred. Guide (CCH) ¶ 31, 507 permits the disclosure utilized by defendant and that the letter is entitled to great judicial deference under the Supreme Court's recent opinion in *Ford Motor Co. v. Milhollin*, 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980). Actually a letter more nearly on point is No. 1267, December 5, 1977, Cons. Cred. Guide (CCH) ¶ 31, 753 "in response to . . . [a request for] an official staff interpretation as to the proper method of disclosure of a service charge on installment loans. . . ." The Board responded to the letter with an unofficial staff interpretation because of the Board's inability to comprehend the meaning of the Fifth Circuit's opinion in *Jones, supra.* The unofficial staff interpretation states as follows:

First, with respect to a case in which the $15.00 service charge is prepaid, staff is of the opinion that the § 226.8(d) disclosures may be made using the following calculations:

| | |
|---|---|
| Proceeds . . . . . . . . . . . . . . . . . . . . . | $3,000.00 |
| Less: Prepaid Finance Charge . . . . . | 15.00 |
| (Loan Fee) | |
| Amount Financed . . . . . . . . . . . . . . | $2,985.00 |
| FINANCE CHARGE | |
| Loan Fee . . . . . . . . . . . . . . | $ 15.00 |
| Interest . . . . . . . . . . . . . . | 390.00 |
| | $ 405.00 |
| Total of Payments . . . . . . . . . . . . . . | $3,390.00 |

In the event that the service charge is added to the face amount of the loan with interest collected on the charge over the life of the loan, the § 226.8(d) disclosures may be made using the following calculations:

| | |
|---|---|
| Proceeds . . . . . . . . . . . . . . . . . . | $3,000.00 |
| Amount Financed . . . . . . . . . . . . . | 3,000.00 |
| FINANCE CHARGE | |
| Loan Fee . . . . . . . . . . . | $ 15.00 |
| Interest . . . . . . . . . . . . | 391.95 |
| | $ 406.95 |
| Total of Payments . . . . . . . . . . | $3,406.95 |

With regard to this latter disclosure, you have pointed out that *Jones v. Community Loan and Investment Corporation of Fulton County* [CCH Consumer Credit Guide ¶ 98,485], 526 F.2d 642 (5th Cir., 1976) held that a loan fee which is collected over the life of a loan but which is not refundable in the event of prepayment must be disclosed as a prepaid finance charge. This is contrary to the Board's view, expressed in Interpretation § 226,-819, that disclosure of the fee as a prepaid finance charge is permissible, but not required. Because of this divergence of opinion and the inability of the staff to speak with any authority for the *Jones* court as regards its views on what constitutes complying disclosures, the staff feels that it would be appropriate to respond to your questions with an official staff interpretation. We suggest that you obtain the advice of legal counsel on the proper interpretation of *Jones* and its impact on your bank's disclosures.

The service charge mentioned in the letter is included in the finance charge pursuant to Regulation Z, 12 C.F.R. § 226.4(a)(2) and the loan fee at issue here is included pursuant to section 226.4(a)(3). The service charge apparently is disclosed pursuant to section 226.8(d)(3). *See* note 5 *supra.* At any rate, there is no reason to believe that the service charge discussed in the letter should be treated differently from the loan fees at issue here. Thus, the letter seems to approve of the disclosure used here.

The Court does not believe, however, that the letter is entitled to the deference for which defendant argues. In *Milhollin*, the Supreme Court did, indeed, place heavy emphasis on the need for administrative uniformity and expertise in construing a technical statute like the Truth in Lending Act. Indeed, more than half of Justice Brennan's majority opinion [6] was devoted to this subject. His opinion relied very heavily on 15 U.S.C. § 1640(f) and a 1976 amendment thereto providing a defense for good faith reliance on Federal Reserve System views:

---

**6.** There were no dissents; two Justices concurred briefly.

No provision of this section or section 1611 of this title imposing any liability shall apply to any act done or omitted in good faith in conformity with any, rule, regulation, or interpretation thereof by the Board or in conformity with any interpretation or approval by an official or employee of the Federal Reserve System duly authorized by the Board to issue such interpretations or approvals under such procedures as the Board may prescribe therefor, notwithstanding that after such act or omission has occurred, such rule, regulation, interpretation, or approval is amended, rescinded, or determined by judicial or other authority to be invalid for any reason.

15 U.S.C.A. § 1640(f) (1980 supp. pamph.) He noted, however:

12 CFR § 226.1(d) authorizes the issuance of official staff interpretations that trigger the application of § 1640(f). Official interpretations are published in the Federal Register, and opportunity for public comment may be requested. Ibid. *Unofficial interpretations have no special status* under § 1640(f).

100 S.Ct. 790, 798 n. 10 (emphasis added). *Accord, Jones*, 544 F.2d 1228, 1232. Thus this Court has not relied on Letter No. 1267 in reaching the decision it has reached.

Finally, the Court believes it would be helpful to make a few observations about some of the cases cited by the plaintiff. Some of those cases are arguably distinguishable from this one. For example, the disclosure in *Ford* used the terms "prepaid finance charge" and "loan fees" on the same line separated only by a slash mark. Although that disclosure did enjoy the simplicity of using only one dollar figure, one cannot readily ascertain how the two terms relate to one another in describing the single dollar figure. The defendant in *Gresham* made the loan fee disclosures in both the federal and state parts of its disclosure form. Seeing the same disclosure twice, a consumer might conclude that the loan fees are two separate charges. The Court, of course, need not and does not reach any conclusion with respect to any disclosure other than the one before it in this case.

The Court concludes, for the foregoing reasons, that defendant has not violated Regulation Z, 12 C.F.R. § 226.6.

## II. FAILURE TO DISCLOSE SECURITY INTEREST IN HOMESTEAD EXEMPTION

■ Plaintiff also complains of defendant's failure to disclose as a security interest on the front of the disclosure form the plaintiff's assignment of her homestead exemption. Defendant does not object to the magistrate's conclusion that this failure constitutes a violation under *Elzea v. National Bank of Georgia*, 570 F.2d 1248 (5th Cir. 1978). Plaintiff objects, however, to the further conclusion that defendant is entitled to a defense under 15 U.S.C. § 1640(f) (quoted *supra* p. 292). Defendant contends, relying upon the affidavit of its Senior Vice President, that it drafted its disclosure according to the interpretation given Regulation Z, 12 C.F.R. § 226.2(gg), by this Court in *Mims v. Dixie Finance Corp.*, 426 F.Supp. 627 (N.D.Ga.1976) (*en banc*). *Mims* was in effect overruled by *Elzea*.

As did Judge Freeman in *Hamilton v. Southern Discount Co.*, No. 79–27A (N.D.Ga. May 30, 1980), the undersigned declines to rule upon the question whether section 1640(f) comprehends judicial interpretations of Regulation Z. *But see* note 7, *infra.* Instead, the Court concurs in the conclusion reached by Judge Freeman in *Hamilton* that *Elzea* should be given only prospective application. In light of the recent Fifth Circuit decision in *Travis v. Trust Company Bank*, 621 F.2d 148 (5th Cir. 1980), the endorsement of Judge Freeman's decision must be qualified as explained below. Judge Murphy has reached the same conclusion as did the *Travis* court in *Brown v. Termplan*, 459 F.Supp. 160 (N.D.Ga. 1978)).

The Supreme Court has set forth a three–part inquiry for determining whether a given judicial decision ought to be applied retroactively:

In our cases dealing with the nonretro-activity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, *see e. g., Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, [392 U.S. 481, 496, 88 S.Ct. 2224, 2233, 20 L.Ed.2d 1231], or by deciding an issue of first impression whose resolution was not clearly foreshadowed, *see, e. g., Allen v. State Board of Corrections*, [393 U.S. 544, 572, 89 S.Ct. 817, 835, 22 L.Ed.2d 1]. Second, it has been stressed that "we must * * * weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." *Linkletter v. Walker*, [381 U.S. 618, 629, 85 S.Ct. 1731, 1737, 14 L.Ed.2d 601]. Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results of applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity." *Cipriano v. City of Houma*, [395 U.S. 701, 706, 89 S.Ct. 1897, 1900, 23 L.Ed.2d 647].

*Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971).

In *Travis* and in *Brown*, the courts began their discussions by noting that the transactions involved ante–dated this Court's opinion in *Mims* and that as a result the lender could not have relied on *Mims*. *Travis* at p. 151; *Brown*, 459 F.Supp. 160, 162. The *Travis* court also went on to conclude that the result in *Elzea* should have been anticipated by "reasonable, prudent creditors." at 151. In the instant case the transaction at issue post–dated *Mims*, and the defendant undisputedly relied upon *Mims*. Thus *Elzea* "establish[ed] a new principle of law . . . by overruling clear past precedent on which litigants may have relied. . . ." *Chevron*, 404 U.S. 97, 106, 92 S.Ct. 349, 355, 30 L.Ed.2d 296. Indeed, defendant not only "may have relied" but did in fact rely upon

*Mims*. As a result of this actual reliance, the Court need not be concerned with *Travis'* discussion of the foreseeability of the *Elzea* decision. In any event such foreseeability must be viewed in light of defendant's undisputed actual reliance upon *Mims*.

In answering the second *Chevron* inquiry, the *Travis* court emphasized that the Truth in Lending Act is designed to deter disclosure violations and not merely to compensate actual injuries. The purpose of the Act and the private enforcement scheme adopted by Congress would "be better served by having *Elzea* apply retroactively." at 151. In this case retroactive application of *Elzea* would not meaningfully deter this defendant or others from disclosure violations. With respect to the sort of disclosure now required by *Elzea*, the defendant conformed its disclosure to the then–current state of the law as expressed in this Court's *en banc* decision in *Mims*. Thus, the defendant having done all that was then required by law, the retroactive application of *Elzea* to this transaction would be an example of the strictest, most absolute liability without fault. Such liability is required by neither the purpose nor express language of the Truth in Lending Act.

"The third test of *Chevron* is whether inequitable results would arise if the *Elzea* holding is applied retroactively." *Travis*, at 151. The *Travis* court noted that the defendant lender in that case had changed its consumer lending forms early in 1976 and that as a result, the one–year statute of limitations in 15 U.S.C. § 1640 made it unlikely that the defendant would suffer great exposure. There are no facts before this Court indicating the potential exposure of Southern Discount on loan contracts similar to the one at issue here. This Court nevertheless believes that an inequitable result would arise from the imposition of *any* liability upon this defendant after its undisputed, good faith, actual reliance upon an *en banc* decision of this Court.

Thus, with respect of each of the inquiries mandated by *Chevron*, this Court believes the undisputed good faith, actual re-

liance of the defendant on the *en banc* decision in *Mims* to be significant grounds for distinguishing this case from the *Travis* case. Thus, the Court will not apply *Elzea* retroactively to transactions in which the lender undisputedly actually relied upon *Mims.*[7]

## III. FAILURE TO DISCLOSE ALLEGED SECURITY INTEREST IN PROCEEDS OF INSURANCE

■ Plaintiff also complains that defendant failed to disclose the following language on the front of the disclosure as a security interest:

> Borrower will keep the collateral (which shall be at Borrower's risk), insured for a reasonable amount against loss by fire or theft (also accidental physical damage on motor vehicles). The proceeds of property insurance shall be payable to both Lender and Borrower as their interests may appear; and Lender may apply insurance proceeds paid to it at its option to repair property or to the debt.

This district has held previously that such an assignment of insurance proceeds need not be disclosed as a security interest. *E. g., Bohanan v. Southern Discount Co.*, C79–255A (N.D.Ga. July 30, 1980) (Freeman, J.); *Hardy v. Southern Discount Co.*, C79–1052A (N.D.Ga. July 23, 1980) (Shoob, J.); *Bolden v. Maryville Loan and Finance Corp.*, No. C76–130A (N.D.Ga.1977) (Freeman, J.) *appeal docketed* No. C78–1050 (5th Cir. Jan. 6, 1978); *Bolden v. Legal Securities, Inc.*, No. C76–845A (N.D.Ga.1977) (Henderson, J.); *Jones v. State Loan and Thrift Corp.*, No. C75–2148A (N.D.Ga.1977) (Edenfield, J.). Recent Fifth Circuit cases have construed the term "security interest" somewhat broadly. *E. g., Edmondson v. Allen–Russell Ford, Inc.*, 577 F.2d 291 (5th Cir. 1978); *Elzea, supra.*

The undersigned believes that in technical areas of the law, uniformity of decisions is often desirable. This is especially so in truth in lending, where a good faith attempt by a lender to satisfy one decision–maker could cause the lender to run afoul of the dictates of another decision–maker. The Act's purpose of enhancing meaningful disclosure so that borrowers may intelligently shop for credit is promoted when all lenders are attempting to follow the same legal authority. But where lender A drafts notes according to a decision of Judge X and lender B drafts notes according to a differing decision of Judge Y, the lending community's resulting confusion will be reflected in confusing disclosures of credit information. Both lenders and borrowers are thus best served by a single, rational line of legal authority governing truth in lending disclosure. That line of authority may not always be absolutely correct, but it is, of course, correctable by appeal. In that regard, the Court notes that one of the cases cited above is already on appeal and was argued in December, 1979. Until such time as the Fifth Circuit rules, this Court will adhere to the precedent of *Bolden, Bolden,* and *Jones.*

Thus, for the reasons set forth in this part of the order, the Court finds no violation in defendant's failure to disclose the assignment of insurance proceeds as a security interest, and for all the reasons set forth above the Court APPROVES and ADOPTS as the order of this Court the magistrate's recommendation that the plaintiff's motion for summary judgment be DENIED. Although defendant has not moved for summary judgment, this order would appear to dispose of the case. Accordingly, plaintiff may show cause within ten (10) days why judgment should not be entered for defendant.

---

7. Although the Court need not decide the precise question of the applicability of 15 U.S.C. § 1640(f), obviously the above discussion has much the same effect as applying 1640(f). In defining the issue before it, the *Travis* court suggested a close relationship between the good faith reliance issue and the retroactivity issue when it stated that "Appellant contends that the civil liability provisions of TILA do not apply when there is good faith reliance upon case law, and therefore, that *Elzea* should be applied prospectively only." at 149.